**STATE of Tennessee**

v.

**Cedric Ruron SAINE.**

Supreme Court of Tennessee, at Nashville.

June 3, 2009 Session.

Nov. 4, 2009.

---

Daniel D. Warlick, Nashville, Tennessee, for the appellant, Cedric Ruron Saine.

Shannon E. Poindexter, Assistant District Attorney General; Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Senior Counsel, for the appellee, State of Tennessee.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

The defendant was indicted following a search of his residence and vehicle that resulted in the discovery and seizure of cocaine. The trial court granted the defendant's Motion to Suppress the evidence relating to both searches. The State appealed, and the Court of Criminal Appeals affirmed the trial court's suppression of the evidence seized from the defendant's residence and reversed the suppression of the evidence seized from the defendant's vehicle. Both parties appealed to this Court. We hold that the search warrant for the defendant's residence was supported by probable cause and that the search of the defendant's vehicle was conducted pursuant to the automobile exception to the warrant requirement. We therefore reverse in part and affirm in part the judgment of the Court of Criminal Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

## Facts and Procedural History

On June 26, 2006, a Davidson County grand jury indicted the defendant, Cedric Ruron Saine, for possession of more than 300 grams of cocaine with the intent to sell, a Class A felony. *See* Tenn.Code Ann. § 39–17–417(j) (2006 & Supp.2008). The indictment resulted from the discovery of cocaine during a May 2, 2006, search of Mr. Saine's residence and vehicle.

Mr. Saine filed a Motion to Suppress the evidence discovered during both searches and the statements made during the course of his arrest. Mr. Saine argued that the search warrant for his residence was unsupported by probable cause because the affidavit filed in support of the search warrant did not establish a sufficient nexus between his drug trafficking and his residence. Mr. Saine sought to suppress the evidence seized from his vehicle on the basis that the search warrant authorized the officers to search only those "vehicles with close proximity to [his residence] and with a nexus to [his residence]."

A hearing on the Motion to Suppress was held on March 9, 2007,[1] during which the search warrant for Mr. Saine's residence and the affidavit of Detective Martin Roberts in support of the search warrant were introduced into evidence. The affidavit, dated April 28, 2006, alleged the exis-

---

[1]. The transcript of the hearing on the Motion to Suppress is dated April 9, 2007. The trial court's Order denying the Motion to Suppress indicates, however, that the hearing occurred on March 9, 2007.

tence of probable cause to believe that the following items, among others, would be found in Mr. Saine's residence: controlled substances, drug paraphernalia, records pertaining to the proceeds of drug transactions, and weapons. The affidavit included the following pertinent information:

- The affiant, Detective Roberts, had worked as a patrol officer, a federal narcotics task force officer, and a narcotics detective since 1993 and was currently assigned to the Specialized Investigations Division of the Metro Nashville Police Department ("MNPD") where his duties included narcotics enforcement, investigation, and prosecution.

- During his tenure, Detective Roberts had observed that drug dealers are known to hide their drugs, the proceeds of drug sales, and financial records related to their business in secure locations "such as their ... residences ... or other locations which they control."

- Within the previous seventy-two hours a "reliable confidential informant" had provided Detective Roberts with information about Mr. Saine whom the informant knew to have sold cocaine in the Nashville area.

- The informant negotiated the purchase of cocaine from Mr. Saine at the direction of Detective Roberts and was given previously photocopied bills with which to purchase the cocaine.

- Detective Roberts followed the informant to the area where the meeting was to take place.

- Other detectives observed Mr. Saine leave his residence driving a black Infiniti and followed him as he traveled directly to the meeting place.

- Detective Roberts observed and monitored the meeting with recording and transmitting equipment.

- After the meeting, the other detectives followed Mr. Saine as he returned directly to his residence and entered it.

- Detective Roberts followed the informant to a predetermined location and questioned the informant regarding the controlled buy.

- Detective Roberts recovered from the informant a plastic bag weighing in excess of fifty grams and containing a white powder that tested positive for cocaine.

- Detective Roberts provided the plastic bag containing the cocaine to the MNPD Property and Evidence Section for submission to the Tennessee Bureau of Investigation Laboratory for chemical analysis.

The trial court also heard testimony from Detective Roberts and other officers involved in the investigation and arrest of Mr. Saine. Although he described only one controlled buy in his affidavit, Detective Roberts testified that he and other officers arranged several controlled buys between Mr. Saine and the informant during the month of April. He further testified that on the day of each of these controlled buys he observed Mr. Saine leave his residence in a black Infiniti, drive to the prearranged meeting place, sell drugs to the confidential informant, and return to his residence. Detective Roberts stated, however, that he did not believe the informant had ever been inside or observed narcotics in Mr. Saine's residence.

The remaining testimony indicates that shortly before the search warrant for Mr. Saine's residence was to be executed, the informant arranged another controlled buy with Mr. Saine. Detective Roberts and other detectives established surveillance of Mr. Saine's residence and saw Mr. Saine leave his residence driving a black Infiniti. Detective Roberts followed him. Mr. Saine had driven approximately 1.5 miles

when Officer Roy Michael Lee stopped him for driving forty miles per hour in a thirty mile-per-hour zone. Sergeant Mark Chestnut arrived on the scene immediately, and Mr. Saine was placed in the back of Sergeant Chestnut's patrol car. Mr. Saine refused to consent to a search of his vehicle. Officer Lee conducted a canine sweep, but the sweep did not indicate the presence of contraband. Officer Lee and Sergeant Chestnut then searched Mr. Saine's vehicle. Officer Lee found approximately a quarter kilogram of cocaine under the driver's seat, and Sergeant Chestnut found a small amount of marijuana. Detective Roberts arrived and read Mr. Saine his rights.[2]

Detective Roberts, Officer Lee, and Sergeant Chestnut all testified concerning their knowledge of the investigation of Mr. Saine at the time of the traffic stop. Detective Roberts testified that Officer Lee and Sergeant Chestnut were notified of the search warrant for Mr. Saine's residence prior to the traffic stop. Officer Lee corroborated this testimony. Officer Lee also stated that he was aware of the ongoing investigation of Mr. Saine, including the previous controlled buys. Officer Lee responded affirmatively when asked by the State whether he was "under the impression that [Mr. Saine] was on his way to make a delivery." Finally, Officer Lee testified that he was planning to stop Mr. Saine regardless of whether he committed a traffic violation. Sergeant Chestnut testified that he first became involved in the investigation on the morning of Mr. Saine's arrest. Regarding his understanding of "the plan," Sergeant Chestnut stated that if "Mr. Saine was to go meet a [confiden-

tial informant] to deliver drugs then we were going to stop him."

The officers executed the search warrant for Mr. Saine's residence following the traffic stop. The officers seized approximately one kilogram of cocaine, three handguns, digital scales, and drug paraphernalia from Mr. Saine's residence.

The trial court entered an Order on March 28, 2007, granting Mr. Saine's Motion to Suppress the evidence secured during the search of Mr. Saine's residence and vehicle based on its determination that the affidavit in support of the search warrant was insufficient:

> [T]he present affidavit does not state with any particularity the confidential informant's knowledge. In fact, nowhere in the affidavit does the affiant allege that information was obtained from the [confidential informant] to indicate that the sale or exchange took place at the defendant's home which was the place to be searched nor that the [confidential informant] observed or knew that drugs were located at the defendant's home. Therefore, the nexus between the pre-arranged drug sale at an undisclosed location in which the confidential informant never sees or discusses the possession or sale of a controlled substance at the defendant's home is insufficient to establish a finding of probable cause.[3]

The trial court entered an order dismissing the indictment on May 17, 2007. The Order of Dismissal stated as follows: "Came the Office of the District Attorney General, prosecuting on behalf of the State of Tennessee and advised the Court that in light of the Court's decision to grant the

---

**2.** *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The trial court did not make a determination regarding the suppression of statements

made by Mr. Saine during the course of his arrest. Nor have the parties raised this issue on appeal.

Defendant's Motion to Suppress, it is unable to proceed with the prosecution of this matter due to insufficient evidence." The next day, the State filed a timely notice of appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.[4]

The Court of Criminal Appeals affirmed the trial court's suppression of the evidence seized from Mr. Saine's residence, reversed the trial court's suppression of the evidence seized from Mr. Saine's vehicle, and vacated the Order of Dismissal.

We granted the State's and Mr. Saine's applications for permission to appeal.

## Analysis

In reviewing a motion to suppress, this Court is bound by the trial court's findings of fact unless the evidence preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn.2001). We are mindful that "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996). The prevailing party in the trial court is afforded "the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id.* While we defer to the trial court's findings of fact, the application of the law to those facts is a question of law, which this Court reviews de novo with no presumption of correctness. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn.1997).

We also review the trial court's conclusions of law de novo. *State v. Carter*, 160 S.W.3d 526, 531 (Tenn.2005).

Both the federal and state constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, section 7 of the Tennessee Constitution similarly guarantees "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." "[U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the state demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement." *State v. Cox*, 171 S.W.3d 174, 179 (Tenn.2005).

### I. Search of Residence

Mr. Saine contends that the search warrant for his residence was unsupported by probable cause because it failed to establish a sufficient nexus between his drug trafficking and his residence. We disagree.

A sworn and written affidavit containing allegations from which a magistrate may determine whether probable cause exists is an "indispensable prerequisite" to the issuance of a search warrant.

---

4. Mr. Saine originally argued that there was no basis for the State's appeal because the trial court dismissed the case pursuant to the State's own notice that it could not proceed. Mr. Saine conceded at oral argument, however, that the State's appeal is consistent with *State v. Meeks*, 262 S.W.3d 710, 719–22 (Tenn. 2008) (holding that when a trial court suppresses evidence, the State has the option of proceeding with the prosecution based on its remaining evidence, pursuing an interlocutory appeal, or requesting dismissal of the indictment to facilitate an appeal as of right).

*State v. Henning,* 975 S.W.2d 290, 294 (Tenn.1998). The affidavit must present facts from which a " 'neutral and detached magistrate, reading the affidavit in a common sense and practical manner' " may determine the existence of probable cause for issuance of the search warrant. *Carter,* 160 S.W.3d at 533 (quoting *Henning,* 975 S.W.2d at 294). "To ensure that the magistrate exercises independent judgment, the affidavit must contain more than mere conclusory allegations by the affiant." *Henning,* 975 S.W.2d at 294.

■ To establish probable cause, the affidavit must show a nexus among the criminal activity, the place to be searched, and the items to be seized. *State v. Reid,* 91 S.W.3d 247, 273 (Tenn.2002); *State v. Smith,* 868 S.W.2d 561, 572 (Tenn.1993). In determining whether the nexus has been sufficiently established, we "consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] ... the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." *Reid,* 91 S.W.3d at 275; *see also Smith,* 868 S.W.2d at 572.

■ In determining whether probable cause supports the issuance of a search warrant, reviewing courts may consider only the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant. *Carter,* 160 S.W.3d at 533. The affidavit in this case did not contain direct information connecting the objects of the search with Mr. Saine's residence. The affidavit did not state, for example, that criminal activity occurred at Mr. Saine's residence or that the fruits of the search were observed there. We must therefore determine whether it was reasonable for the magistrate to infer that the items of contraband listed in Detective Roberts's affidavit would be located in Mr. Saine's residence. As one commentator has noted,

> [T]here need not be definite proof that the seller keeps his supply at his residence.... [I]t will suffice if there are some additional facts, (such as that ... the seller or buyer went to his home prior to the sale or after the sale ...) which would support the inference that the supply is probably located there.

2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(d) (4th ed. 2004 & Supp.2008–09) (footnotes omitted).

The affidavit explained that the officers followed Mr. Saine directly from his residence to the prearranged location where recording and transmitting equipment enabled the officers to observe Mr. Saine selling cocaine to the informant. The officers then followed Mr. Saine directly back to his residence. From these facts, the magistrate could reasonably infer that the supply of drugs was located in Mr. Saine's residence. *See id.* § 3.7(d) n. 165 (citing state and federal cases with similar holdings from various jurisdictions); cf. *Smith,* 868 S.W.2d at 572 (finding that the affidavit established probable cause to search the defendant's residence where the objects sought were of a type kept at one's residence and the defendant admitted to returning directly home after being with the victims on the night of the murder).

This inference was further supported by Detective Roberts's experience that drug dealers ordinarily keep their drugs, the proceeds of drug sales, and financial records related to their business in their residences. *See United States v. Miggins,* 302 F.3d 384, 393–94 (6th Cir.2002) (citing a long line of cases); *compare United States v. Kenny,* 505 F.3d 458, 461–62 (6th Cir. 2007) (holding that the affidavit showed a

nexus when the defendant was arrested for manufacturing methamphetamine at another location, which "is only a step away from dealing"), with *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (holding that the affidavit did not show a nexus when the defendant was arrested on his porch with cocaine in his pocket).

■ The probable cause determination of a neutral and detached magistrate is "entitled to 'great deference' by a reviewing court." *State v. Jacumin*, 778 S.W.2d 430, 431–32 (Tenn.1989). Applying this standard of review, we conclude that the facts contained in the application for the search warrant established a substantial basis on which the magistrate could conclude that evidence of Mr. Saine's drug trafficking would be found inside his residence. *See id.* We therefore hold that the search warrant for Mr. Saine's residence was supported by probable cause and reverse the trial court's suppression of the evidence obtained during that search.

## II. Search of Vehicle

■ The "automobile exception" to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The rationale for the automobile exception is two-fold. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); *California v. Carney*, 471 U.S. 386, 392–93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). First, it is often impractical for officers to obtain search warrants in light of the inherent mobility of automobiles. *Carney*, 471 U.S. at 393, 105 S.Ct. 2066. Second, individuals have a reduced expectation of privacy in their automobiles. *Id.* If the officer has probable cause to believe

that the automobile contains contraband, the officer may either seize the automobile and then obtain a warrant or search the automobile immediately. *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). "Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.*

Turning to the facts of this case, Officer Lee was aware of the ongoing investigation of Mr. Saine, including the prior controlled buys. Both Officer Lee and Sergeant Chestnut were aware of the search warrant for Mr. Saine's residence and the controlled buy that was set to occur shortly after Mr. Saine left his residence. These facts are sufficient to provide Officer Lee and Sergeant Chestnut with probable cause to believe that Mr. Saine was driving to the controlled buy with narcotics in his vehicle.

■ The United States Supreme Court has held that the automobile exception does not require a separate finding of exigency in addition to a finding of probable cause under the United States Constitution. *Maryland v. Dyson*, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) ("[U]nder our established precedent, the 'automobile exception' has no separate exigency requirement."). In *State v. Leveye*, we acknowledged that this Court has consistently followed United States Supreme Court decisions involving the automobile exception and deemed it "appropriate to continue to do so." 796 S.W.2d 948, 953 (Tenn.1990). We therefore hold that the automobile exception does not require a separate finding of exigency under the Tennessee Constitution. Accordingly, probable cause, without more, permitted Officer Lee and Sergeant Chestnut to search Mr. Saine's vehicle.

■ Suppression of the evidence is not required because Officer Lee stopped

Mr. Saine for speeding as a pretext to afford an opportunity to search Mr. Saine's vehicle for narcotics. When a law enforcement officer has probable cause to believe that a traffic violation has occurred, the stop of the vehicle is considered constitutionally reasonable irrespective of the subjective motivations of the officer making the stop. *Whren v. United States,* 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Vineyard,* 958 S.W.2d 730, 734 (Tenn.1997).

Because we find that the search of Mr. Saine's vehicle was justified by the automobile exception to the warrant requirement, we decline to address the State's alternative argument that the search was also justified as a search incident to arrest. Likewise, we express no opinion as to whether the search of Mr. Saine's vehicle was justified by the search warrant for his residence.

### Conclusion

We therefore reverse in part and affirm in part the judgment of the Court of Criminal Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against the defendant, Cedric Ruron Saine, for which execution may issue if necessary.