# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. RONALD JEROME GLEAVES

### Direct Appeal from the Criminal Court for Davidson County
### No. 2007-D-3248    Mark J. Fishburn, Judge

_____

### No. M2009-01045-CCA-R3-CD - Filed August 13, 2010

_____

The Defendant, Ronald Jerome Gleaves, was indicted following the execution of a search warrant that led to the discovery and seizure of narcotics.  The Defendant moved to suppress the evidence seized during the search, arguing the warrant was unconstitutionally issued. The trial court granted the Defendant's motion and dismissed the charge against the Defendant.  The State appeals, contending the warrant was valid, and the evidence was admissible.  After a thorough review of the record and applicable law, we reverse the order suppressing the drugs found during the execution of the search warrant.  We vacate the order dismissing the indictment and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined.  DAVID H. WELLES, J., not participating.

Erik R. Herbert, Nashville, Tennessee (at motion to suppress), and Ronald Jerome Gleaves, Pro se, Clifton, Tennessee (on appeal).

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Shannon E. Poindexter, Assistant District Attorney General, for the Appellant, State of Tennessee.

## OPINION

## I. Background

In May 2007, Metro Nashville Police Department officers obtained and executed a search warrant for the residence located at 601 South 9th Street in Nashville, Tennessee. During this search, they discovered hydromorphone. This discovery led a Davidson County grand jury in November 2007 to indict the Defendant for intent to sell or deliver fifty grams or more of a Schedule II controlled substance within 1000 feet of school property, a Class A felony. *See* T.C.A. § 39-17-417(i)(3) (2009).

The Defendant, through counsel, moved to suppress the evidence discovered during the search of the residence located at 601 South 9th Street, Nashville, Tennessee, arguing the warrant was unsupported by probable cause because the affidavit filed in support of the warrant failed to establish a sufficient nexus between drug-related activity and the residence.

The technical record does not contain a transcript of a suppression hearing, and the record does not suggest that such a hearing took place. The record does, however, contain a copy of the warrant and its supporting affidavit, each party's memorandum in support of their position with respect to the Defendant's Motion to Suppress, and the trial court's order granting the Motion to Suppress. Both the memoranda and the order recite details about the search warrant's execution that are not otherwise mentioned in the record.

The affidavit, dated April 26, 2007, alleged that probable cause existed to believe that the following items, among others, were located within or upon the premises known as 601 South 9th Street: controlled substances, drug paraphernalia, proceeds from drug sales, records of drug sales, weapons, and items used to conceal the foregoing materials.

The affidavit stated the training and credentials of the affiant, Detective J. David Goodwin: An officer since 1997, he was a member of the Narcotics Unit of the Specialized Investigation Division of the Metro Nashville Police Department. He had participated in the execution of over three hundred search warrants, had attended numerous training workshops on the subject of asset forfeiture, money laundering investigations, and the investigation of complex drug organizations.

The detective stated that, from his training and experience, he had learned that "persons present at locations where illegal narcotics are sold and/or used often have contraband, narcotics, paraphernalia, weapons, or other evidence of criminal conduct hidden on their person or in their belongings." He further stated that narcotic offenders "very often" hide "contraband, proceeds of drug sales, and records of drug transactions" in secure locations such as banks, safe deposit boxes, storage units, residences, businesses, or "other locations which they control."

2

A confidential informant, who had "previously provided information that ha[d] lead to the recovery of narcotics," informed the detective that "narcotics were being sold from 601 S. 9th St." Within seventy-two hours before the affiant swore to the affidavit, detectives established surveillance of 601 South 9th Street, and the informant contacted "Zee," a black male, with whom the informant arranged to purchase Dilaudid, a Schedule II substance. Zee instructed the informant to meet him at a Gallatin Road location in order to conduct the sale. While an undercover officer escorted the informant to the meeting location, the detectives conducting surveillance of the South 9th Street residence observed a black male, later identified as Zee, leave in a car. Detectives followed Zee's car, which went directly to the meeting place where officers observed Zee selling the informant a bag of yellow Dilaudid pills. Detectives followed Zee as he left the meeting place and directly returned to the South 9th Street residence. The affidavit does not identify either the Defendant or his co-defendant as the man police knew as Zee.

Based on the activity observed near the 601 South 9th Street residence, the detective requested authorization to search, among other things, the residence, all persons present, all vehicles present, and all vehicles related to all persons present. The magistrate granted the search warrant, authorizing detectives to search each requested area.

As discussed above, several documents in the record reference facts either stipulated to by the parties or established during a preliminary hearing not memorialized in the record. The Defendant's Motion to Suppress states that, when the search warrant was executed on May 1, 2007, officers searched the residence but found no contraband. They detained the Defendant, his girlfriend, and Michael Wilson, the Defendant's co-defendant, who were all present at 601 South 9th Street. A search of Wilson's person yielded a loaded gun, a cell phone, and the keys to a Lincoln LS parked behind the residence. A search of the Defendant's person yielded a cell phone and $11,790 in cash. Officers searched the Lincoln LS and recovered seventeen bags of yellow pills from the passenger door panel. The Tennessee Bureau of Investigation determined these bags contained 1600 pills, totaling 150.9 grams of hydromorphone, a Schedule II controlled substance.

The Defendant argued in his Motion to Suppress that the affidavit contained insufficient probable cause because, pursuant to the Tennessee Court of Criminal Appeals decision in *State v. Saine*, simply returning to a residence after a drug deal does not give probable cause to believe the residence contains evidence of criminal conduct. *See State v. Cedric Ruron Saine*, No. M2007-01277-CCA-R3, 2008 WL 918511 (Tenn. Crim. App., at Nashville, Apr. 4, 2008), *rev'd State v. Saine*, 297 S.W.3d 199-206-07 (Tenn. 2009).[1] The

---

[1]We will discuss in more detail below the Tennessee Supreme Court's recent reversal of this Court's decision in *Saine*.

Defendant also argued the confidential informant's statement that drugs were being sold from the residence lacked the factual basis necessary for the statement to support a probable cause determination. *See State v. Jacumin*, 778 SW.2d 430, 436 (Tenn. 1989).

The State's memorandum in opposition to the Defendant's Motion to Suppress largely echoes the Defendant's recitation of the facts surrounding the execution of the warrant. In its memorandum, the State argues that the police observation of the Defendant leaving the 601 South 9th Street residence, selling drugs to the informant, and returning to the residence establishes a sufficient nexus between the criminal activity and the residence. It argued that the Defendant's challenge to the sufficiency of the affidavit as it related to the informant was misplaced because the magistrate relied on the officers' account of the controlled buy when it issued the search warrant.

The trial court entered a written order granting the Defendant's Motion to Suppress. In that order, the trial court refers to Zee and the Defendant interchangeably. The order's description of the warrant's execution is nearly identical to that of the Defendant's Motion to Suppress. The trial court's order appears to proceed from the legal assumption that an application for a warrant to search a residence for drugs must establish that drugs are being sold from the residence. The trial court first found that the affidavit did not set out the informant's basis of knowledge for his statement, as required by *Jacumin*. The trial court then found that, because drugs were not sold from the house during the controlled buy, the officers' observations during the controlled buy could not cure the deficiency in the informant's reliability by corroborating his statement. The trial court explained that, due to this deficiency, the informant's statement that drugs were sold from 601 South 9th Street was not reliable under *Jacumin* and could not be relied upon in issuing the search warrant.

The trial court ultimately found that probable cause did not exist to support a search warrant because the affidavit did not indicate how long the Defendant remained at the residence, whether he resided in the residence, and whether he stored and retrieved drugs from the residence. The trial court noted that a defendant's being a drug dealer is insufficient alone to establish a nexus between criminal activity and the drug dealer's home, for purposes of obtaining a search warrant for the dealer's home. Having concluded that the warrant was unsupported by probable cause, the trial court granted the Defendant's Motion to Suppress the evidence seized during the search of the residence and premises of 601 South 9th Street. After the State informed the trial court that, without the suppressed evidence, it could not proceed to trial, the trial court dismissed the charge against the Defendant. The State now appeals the trial court's order granting the Defendant's Motion to Suppress.

## II. Analysis

On appeal, the State contends the trial court erred when it suppressed the evidence seized during the search of the residence at issue. It argues that, because the affidavit set out that officers had observed the Defendant leave the residence, sell drugs to their confidential informant, and return to the residence, the issuing magistrate had probable cause to issue the search warrant. The State supplemented its brief with a copy of *State v. Saine*, a Tennessee Supreme Court opinion released after briefs were filed in this case. The *Saine* court held that a police officer's observation of a drug seller leaving from and returning to the drug seller's residence before and after a drug deal gives probable cause to believe the residence will contain the drug seller's supply. *State v. Saine*, 297 S.W.3d 199, 206-07 (Tenn. 2009).

The Defendant responds that the trial court properly suppressed the evidence seized during the search of the residence at issue. He contends that the affidavit failed to establish either that he was the drug seller known as "Zee," or that the property located at 601 9th Avenue South was his residence. He argues that, lacking evidence of these facts, the affidavit contained insufficient information to support the inference that the residence would contain evidence of drug-related activity.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id*. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id*. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. *State v. Walton*, 41 S .W.3d 75, 81 (Tenn. 2001).

We begin our analysis with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Similarly, Article I, Section 7 of the Tennessee Constitution provides:

5

[P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7.

"[A] search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause of its issuance." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause to issue a search warrant, an affidavit must supply reasonable grounds for suspicion that an illegal act is occurring. *Id*. Thus, the need for the magistrate to make a neutral and detached decision regarding the existence of probable cause requires that the affidavit contain more than mere conclusory allegations by the affiant. *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992).

An affidavit must show a nexus between the criminal activity, the place to be searched, and the items to be seized in order to give a magistrate probable cause to issue a warrant. *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). When the affidavit contains no direct evidence of such a nexus, "we must . . . determine whether it was reasonable for the magistrate to infer that the item of contraband listed in the affidavit would be located" in the place to be searched. *Saine*, 297 S.W.3d at 206. In evaluating the likelihood that a residence will contain an item of contraband, we consider "whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." *Reid*, 91 S.W.3d at 275; *see also Smith*, 868 S.W.2d at 572.

In *Saine*, the Tennessee Supreme Court recently held that circumstances similar to those in this case constituted probable cause to issue a search warrant. *Saine*, 297 S.W.3d at 206-07. In that case, a detective swore by affidavit that he observed the defendant leave his residence, sell drugs to a confidential informant, and return directly to his residence. *Id*. at 203-04. The detective also stated in the affidavit that, in his experience, drug sellers commonly stored drugs, proceeds, and records thereof in their residences or "other locations which they control." *Id*. at 202. The Supreme Court explained that an affidavit lacking "definite proof that the seller keeps his supply at his residence" gives probable cause to

6

search a location as long as the affidavit contains "some additional facts," such as that the seller went to his home either before or after the sale, "which would support the inference that the supply is probably located there." *Id*. (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp.2008-09) (footnotes omitted). The Court concluded that, because the detective stated his knowledge of drug sellers' storage practices and because the detective observed the defendant travel directly to the controlled buy location from his home and directly return, the magistrate had probable cause to believe the home would contain evidence of his drug activity. *Id*. at 206-07.

In this case, the affidavit explained that a confidential informant informed police that drugs were being sold from the residence at 601 South 9th Street. At the officers' direction, the confidential informant then arranged to buy drugs from a man named Zee, identified in several parts of the record as the Defendant, at a nearby location. Officers then observed the Defendant travel from the 9th Street residence directly to the agreed location, sell the informant drugs, and directly return to the 9th Street residence. Detective Goodwin filed an affidavit requesting a search warrant within seventy-two hours of the controlled buy. In the affidavit, the detective stated that, in his experience, drug sellers "very often hide contraband, proceeds of drug sales, and records of drug transactions in secure location[s] such as their own banks, safe deposit boxes, storage units, residences, businesses, or other locations which they control." The affidavit does not contain any statement identifying the house at 601 South 9th Street as the Defendant's residence.

The State contends on appeal that the majority of both state and federal jurisdictions have sanctioned the issuance of a search warrant of a drug dealer's home, especially where the dealer either came from his home to conduct the sale or returned to his home after the sale. The State supplemented its brief with the *Saine* opinion, which falls in line with the majority of federal and state courts. The State argues that, because police observed the Defendant leave the South 9th Street residence, sell their informant drugs, and directly return to the residence, the magistrate had probable cause to believe the residence contained evidence of the Defendant's drug activity, such as proceeds of the sale. As a result, the State argues, the trial erred in suppressing the evidence seized during the execution of the warrant.

The Defendant contends in response to the State's appeal that the affidavit failed to establish his identity as "Zee," the man from whom the informant bought drugs. The trial court in its order suppressing the evidence seized referred to the Defendant and Zee interchangeably. Thus, the trial court implicitly found that the Defendant was the person known as Zee who sold the informant drugs. The Defendant did not attack his identity as Zee in his motion for suppression of evidence seized in this case. Rather, he argued in his motion simply that a drug seller's leaving and returning to his residence before and after a

7

drug deal does not constitute probable cause to search his residence. Thus, the Defendant appears originally to have conceded his identity as "Zee." Further, the Defendant's identity as Zee is not necessary for a valid search warrant to issue for a residence associated with Zee. If the affidavit set forth sufficient facts from which to infer the residence contained supplies, proceeds, and records of Zee's drug activity, the affidavit contained probable cause to search the residence. The Defendant's first contention, therefore, does not affect our view of the warrant's lawfulness.

The Defendant's second argument is that the affidavit failed to establish that the home searched was his residence. Indeed, the affidavit in this case does not contain any asssertion that the home at 601 South 9th Street was the Defendant's, or Zee's, residence. The authoritative case in this jurisdiction, *State v. Saine*, concerned the search of the home of a drug dealer. 297 S.W.3d at 202, *et seq*. Many of the cases cited in *Saine* for persuasive authority likewise concerned the homes of drug dealers. *Id*. The facts here, however, concern a home, which a drug dealer, who may or may not reside at the home, used as a base for his sale of drugs to an informant. The significance of this difference warrants discussion.

The justification for allowing the search of a drug dealer's home is that, under some circumstances, one may reasonably infer that a drug dealer is storing evidence of his drug activity in his home. *Saine*, 297 S.W.3d at 206. Both common sense and the information commonly set forth by police applying for drug-related search warrants support this idea. In fact, as the officer in this case advised, drug sellers "very often" hide evidence of their drug transactions in "locations which they control." In our view, therefore, one could reasonably infer that a drug dealer is storing drug-related material in a home he uses, though he may not formally reside in the home. We note that the alternative position, that an affidavit must clearly establish that the place to be searched is the dealer's formal residence, would require law enforcement to acquire documentation connecting a dealer to a home. Acquiring this documentation would be impossible in some cases, e.g. where a dealer permanently lives in a home but is not mentioned in the title or lease pertaining to the home. Further, efforts by law enforcement personnel to obtain this information might inadvertently alert the dealer of their intent to obtain a search warrant of his home, leading the dealer to remove or destroy evidence. Another obvious ramification of this approach would be that drug dealers would operate out of the home of another without threat of police searching the home.

In this case, the affidavit contains information that suggests the dealer Zee had some form of constancy in his dealings with the searched residence. To wit, the informant, who was aware that someone was selling drugs from the residence, chose to contact Zee. Therefore, the informant apparently believed Zee to be involved in this drug activity connected to the residence. Indeed, after the informant, at the suggestion of law enforcement, called Zee and arranged to buy drugs from him at a location near the house,

8

police observed Zee leave the house, travel to the agreed upon location, sell the informant drugs, and return to the residence. The informant's association of Zee with the drug-related activity at the residence as well as Zee's observed exiting and entering the residence implies that Zee, at a minimum, was free to come and go from the residence. We conclude that one could reasonably infer from the affidavit that dealer Zee was "in control of" the residence. Further, the Defendant's direct trip from the residence to the controlled buy and direct return to the residence provide the "additional facts" necessary to "support the inference that [dealer's] supply is probably located [at the residence]." *Saine*, 297 S.W.3d at 206. The affidavit, therefore, established a nexus between the drug dealing, the dealer, and the residence, and the magistrate had probable cause to issue the search warrant. *Reid*, 91 S.W.3d at 275; *see also Smith*, 868 S.W.2d at 572. We, therefore, reverse the decision of the trial court granting the Defendant's Motion to Suppress the evidence seized during the search of the residence at 601 South 9th Street.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude that the trial court improperly granted the Defendant's Motion to Suppress the evidence seized during the search of 601 South 9th Street. As such, we reverse the order suppressing the drugs found during the execution of the search warrant. We vacate the order dismissing the indictment and remand for further proceedings consistent with this opinion

_____

ROBERT W. WEDEMEYER, JUDGE