IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 7, 2022 Session

**STATE OF TENNESSEE v. STEPHEN PAUL HAMPTON and
MARGARET MARY HAMPTON**

**Appeal from the Circuit Court for Madison County
No. 20-23      Donald H. Allen, Judge**

_____

**No. W2021-00938-CCA-R3-CD**

_____

Stephen Paul Hampton and Margaret Mary Hampton were charged in the Madison County Circuit Court with drug and weapon offenses, but the charges were dismissed after the trial court granted their motions to suppress statements made to a police officer and evidence found in their vehicle.  On appeal, the State contends that the trial court erred by granting the motions to suppress because the statements were not made during a custodial interrogation and because the police officer had probable cause to search the vehicle. Based upon the oral arguments, the record, and the parties' briefs, we reverse the trial court's orders granting the motions to suppress, vacate the order dismissing the indictment, and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed,
Case Remanded**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellant, State of Tennessee.

Cory Hancock (on appeal) and C. Mark Donahoe (at hearing), Jackson, Tennessee, for the appellees, Stephen Paul Hampton and Margaret Mary Hampton.

**OPINION**

**FACTS**

In December 2019, the Madison County Grand Jury returned a five-count indictment, charging the Defendants jointly with possession of not less than one-half ounce of marijuana with intent to sell, a Class E felony; possession of not less than one-half ounce of marijuana with intent to deliver, a Class E felony; and possession of drug paraphernalia, a Class A misdemeanor, and charging Mr. Hampton alone with two counts of possession of a firearm with intent to go armed during the commission of a dangerous felony, a Class D felony. On March 19, 2021, the Defendants filed a motion to suppress the evidence found in their SUV on the basis that the police officer obtained the evidence as a result of a warrantless search without probable cause. Mr. Hampton also filed a motion to suppress statements he made to the officer on the basis that the statements were the result of a custodial interrogation without receiving *Miranda* warnings.

At the suppression hearing, Investigator Robert Pomeroy of the Jackson Police Department's Metro Narcotics Unit testified that about 9:00 p.m. on August 17, 2019, he was participating in an undercover prostitution operation and had been assigned to watch the parking lot of a hotel at 200 Campbell Oaks Drive. Investigator Pomeroy was sitting in his unmarked police car with his windows slightly open and "kept smelling marijuana." The odor intensified, but Investigator Pomeroy did not see anyone in the parking lot. He eventually looked over his right shoulder and noticed an SUV parked at the dead end of Campbell Oaks Drive. Two people were standing outside the SUV. Investigator Pomeroy could not see their faces but could see "the hot embers of something being moved back and forth." The two people got into the SUV, and the SUV began traveling on Campbell Oaks Drive.

Investigator Pomeroy testified that he pulled out behind the SUV and began putting on his bulletproof vest. The SUV turned into the parking lot of another hotel at 150 Campbell Oaks Drive, so Officer Pomeroy followed the SUV into the parking lot. The SUV backed into a parking space, and Investigator Pomeroy pulled into a parking space two or three spaces away. Investigator Pomeroy got out of his police car and walked toward the SUV. He said that as he approached the vehicle, the smell of marijuana was "getting stronger and stronger." Mr. Hampton was sitting in the driver's seat and started to get out of the SUV. Investigator Pomeroy was standing by the driver's door and asked Mr. Hampton, "[H]ey, why are ya'll smoking marijuana in the parking lot[?]" Mr. Hampton initially denied smoking marijuana, so Investigator Pomeroy told him, "I can smell it and it's very strong." Investigator Pomeroy then asked Mr. Hampton, "[H]ow much weed you got in the car?" Mr. Hampton answered, "[A]bout six ounces." At that point, Mrs. Hampton, who was sitting in the front passenger seat, said, "'It's ours.'"

Investigator Pomeroy testified that he "went to get [Mr. Hampton] out of the car to detain him," that he handcuffed Mr. Hampton, and that he saw a Sig Sauer handgun in the pocket of the driver's door. Investigator Pomeroy said that he never turned on his police

car's blue lights and that Mr. Hampton was not in custody when Investigator Pomeroy asked Mr. Hampton about the marijuana. Investigator Pomeroy did not ask Mrs. Hampton any questions, and he acknowledged that she voluntarily stated, "'It's ours.'"

Investigator Pomeroy testified that he detained the Defendants and that he radioed for other officers. He acknowledged that the smell of marijuana gave him probable cause to search the SUV and said that he found 153 grams of marijuana, "a few little like marijuana edibles," a couple of vials of THC oil, a marijuana pipe, and a partially-smoked marijuana "roach" in the vehicle. Mr. Hampton voluntarily told Investigator Pomeroy that their daughter had scoliosis and lived in Nashville and that they were taking the items to her for "therapeutic treatment." Other officers arrived on the scene, and Investigator Pomeroy did not hear any officers ask either of the Defendants about the marijuana. He acknowledged that he was familiar with the smell of marijuana and said that he had smelled marijuana "[t]housands of times."

On cross-examination, Investigator Pomeroy acknowledged that hemp, which was legal in Tennessee, looked and smelled identical to marijuana. He also acknowledged that when he first saw the Defendants standing outside the SUV at the end of Campbell Oaks Drive, they were alone and were not selling marijuana to anyone. Investigator Pomeroy said that he initially planned to follow the SUV "to find probable cause for a traffic stop." However, the SUV turned into the hotel parking lot at 150 Campbell Oaks Drive, so Investigator Pomeroy also turned into the parking lot. Investigator Pomeroy, who was wearing his bulletproof vest and was clearly marked as a police officer, approached the SUV as Mr. Hampton was getting out of the vehicle. Investigator Pomeroy saw the gun while Mr. Hampton was exiting the SUV, and he arrested Mr. Hampton for possessing the marijuana and firearm. He acknowledged that he never advised the Defendants of their *Miranda* rights.

Investigator Pomeroy testified that the marijuana was in small pill bottles, that he found "quite a few" bottles in the SUV, and that the marijuana had been "[p]ackaged for distribution from a legal dispensary." He acknowledged that the bottles of marijuana had been labeled legally in another state and that Mr. Hampton had a medical marijuana card from Oklahoma. He also acknowledged that there was no proof in the SUV that the Defendants were selling or distributing the marijuana, and he described them as "[p]robably one of the nicest couples I've ever dealt with." Defense counsel asked if exigent circumstances existed in the case, and Investigator Pomeroy said no because the SUV was parked in a parking space. Investigator Pomeroy said that he did not hear other officers ask the Defendants any questions but that it was possible another officer asked them about the marijuana.

At the conclusion of Investigator Pomeroy's testimony, the trial court questioned him as follows:

THE COURT: All right. So you smelled marijuana and then what did you do when you noticed what you believed to be marijuana?

WITNESS: So I started looking around the parking lot, you know, because I'm in this undercover vehicle trying to figure out where it's coming from. When I looked back over my right shoulder, that's when I seen the vehicle parked at the -- it's like they are going to extend the road eventually and they may have by now, but there's a vehicle parked there and I can see two subjects who I can't make out standing around the rear of the vehicle and I can see something burning like a cigarette or, you know, marijuana or a cigar in that area. So, that's where I assumed that smell was coming from because there was nobody else on the lot. There was nobody in front of me because I had been out there for a couple of hours.

THE COURT: Okay. All right. So, you noticed that and then what did you do?

WITNESS: So, I was going to go down there and make contact with them at the dead end. Before I was able to do that, they got in their car and started driving. I had [thrown] my vest over my head and as I was driving I kind of strapped it on and then they immediately turned into the next parking lot which would be 150 Campbell Oaks. They pulled in and pulled into a parking spot. So, I drove in and drove past them and parked about three or four spaces down and then just walked up and made a consensual encounter with them at the vehicle.

THE COURT: All right. And tell me again, what was the first thing you said to them when you approached their vehicle?

WITNESS: So, he looks at me and I ask him, I said, "Why were y'all smoking marijuana in the parking lot?" He denied that at first and I ended up telling him, you know, "I can smell it. It's very strong." I asked him -- I said, "How much weed is in the car?" He said, "About six ounces." That's when Mrs. Hampton said, "It's ours." So, then he was detained and the search was conducted of the vehicle.

THE COURT: Okay. All right. Thank you.

- 4 -

Defense counsel introduced into evidence the warrant charging Mr. Hampton with possession of drug paraphernalia. The warrant included Investigator Pomeroy's affidavit of complaint, which provided as follows:

> On 8-17-2019, at 2120 hours a consensual encounter was made in the parking lot of 150 Campbell Oaks [D]rive (Hampton Inn) in Jackson Tn with Stephen Hampton. Contact was made with Hampton as he was exiting his vehicle and a very strong odor of marijuana was noticed coming from his vehicle and person. A firearm was also observed in the driver door pocket as Hampton was exiting the vehicle. Hampton was then detained and a probable cause search of the vehicle was conducted. The search yielded approximately 170 grams of medical grade marijuana in multiple containers, 2 bottles of THC oil, 1 vape canister, 1 partial marijuana blunt, 3 THC gummies, 2 THC chews, 3 glass marijuana pipes with marijuana residue and a loaded Sig Sauer .40 cal handgun.

At the conclusion of Investigator Pomeroy's testimony, defense counsel argued that the officer did not have probable cause for the warrantless search of the SUV because the officer did not know whether he was smelling hemp or marijuana and that the exigent circumstances exception to the warrant requirement did not exist in this case. Defense counsel also argued that the trial court should suppress the statements made by both of the Defendants because Investigator Pomeroy questioned them while they were in custody without giving them *Miranda* warnings. The State argued that the smell of marijuana, Mr. Hampton's statements about the marijuana, and Investigator Pomeroy's seeing the gun in the vehicle while he was detaining Mr. Hampton gave the officer probable cause to search the SUV. The State also argued that because the subject of the search was an automobile, the warrantless search was justified under the exigent circumstances exception to the warrant requirement. As to the statements made by the Defendants, the State argued that Mr. Hampton was not in custody or detained when Investigator Pomeroy approached the SUV; therefore, Mr. Hampton did not make his initial statements as part of a custodial interrogation. The State also argued that Mr. Hampton's statement about taking the marijuana to their daughter and Mrs. Hampton's statement about the marijuana belonging to them were made voluntarily, not in response to any police questioning.

The trial court accredited Investigator Pomeroy's testimony. The trial court found that the officer had reasonable suspicion to believe the Hamptons were smoking marijuana when he began following their SUV and that he had a right to approach their SUV when they parked in the hotel parking lot. However, the trial court found that the officer had decided to detain the Hamptons when he began questioning them and, therefore, that he should have given them *Miranda* warnings prior to questioning. The trial court noted that Investigator Pomeroy testified that no exigent circumstances existed in this case. Thus, the

trial court also found that a warrant was required prior to his searching their SUV. Accordingly, the trial court ordered that the statements made by the Hamptons and that the evidence found in their SUV be suppressed.

On July 22, 2021, the trial court entered an order granting the Defendants' motion to suppress their statements and an order granting the Defendants' motion to suppress the evidence found during the search. On July 29, 2021, the State moved to dismiss the indictment on the basis that it could not prove the charges without the Defendant's statements and the evidence. On August 4, 2021, the trial court entered an order dismissing the indictment without prejudice.

## ANALYSIS

On appeal, the State argues that the trial court erred by granting the motions to suppress because the Defendants were not in custody when they made their incriminating statements and because the officer had probable cause to search their SUV. The Defendants contend that the trial court properly granted their motions to suppress. We agree with the State and conclude that the trial court erred by suppressing the Defendants' statements and the evidence found in the SUV.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. *Id.* Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the prevailing party is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

## I. Statements

First, we will address the State's claim that the Defendants' statements did not result from a custodial interrogation. Generally, the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution provide a privilege against self-incrimination to those accused of criminal activity, making an inquiry into the voluntariness of a confession necessary. *See State v. Callahan*, 979 S.W.2d 577, 581 (Tenn. 1998). As our supreme court has explained:

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The procedural safeguards must include warnings prior to any custodial questioning that an accused has the right to remain silent, that any statement he makes may be used against him, and that he has the right to an attorney.

*State v. Blackstock*, 19 S.W.3d 200, 207 (Tenn. 2000). *Miranda* warnings are necessary only in situations involving custodial interrogation or its functional equivalent. *See, e.g.*, *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *State v. Dailey*, 273 S.W.3d 94, 102-03 (Tenn. 2009). In determining whether a suspect is in custody for *Miranda* purposes, we must consider "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996). The analysis is very fact-specific. *Id.* Certain factors are relevant to our inquiry, including but not limited to the following:

the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Id.* Whether a suspect is in custody is determined by an objective test. *State v. Bush*, 942 S.W.2d 489, 499 (Tenn. 1997).

Applying the *Anderson* factors to the evidence at the suppression hearing, we conclude that the Defendants were not in custody under the totality of the circumstances. The Defendants pulled into the parking space of a hotel, and Investigator Pomeroy pulled into a parking space that was several spaces away from them. He did not block their SUV with his police car, and he did not turn on his police car's emergency equipment. Investigator Pomeroy walked to the Defendants' SUV as Mr. Hampton was getting out of

the vehicle and asked Mr. Hampton, "Why are y'all smoking marijuana?" Investigator Pomeroy was the only officer present, and nothing indicates that his demeanor was anything but calm and polite. Mr. Hampton initially denied smoking marijuana, so Investigator Pomeroy advised him that the smell was very strong. As noted by the State, his questioning of Mr. Hampson was very brief, just a matter of seconds. Investigator Pomeroy allowed Mr. Hampton to get out of the SUV, and Investigator Pomeroy did not handcuff Mr. Hampton until he saw the gun in the driver's door. Therefore, we conclude that Mr. Hampton's initial statements were not made during a custodial interrogation.

As for Mr. Hampton's statement about the marijuana being for their daughter's medical condition and Mrs. Hampton's statement that the marijuana belonged to them, Investigator Pomeroy testified that the Defendants made their statements after they were in custody but voluntarily without any questioning from him. He also said that he did not hear any other officers question them. The Defendants did not testify at the suppression hearing, and no evidence was presented other than Investigator Pomeroy's testimony, which the trial court accredited, and the warrant containing the officer's affidavit of complaint. Thus, the evidence preponderates against any finding that the Defendants' statements stemmed from a custodial interrogation, and we conclude that the trial court erred by suppressing the statements.

## II. Search

We now turn to the State's claim that the smell of marijuana gave Investigator Pomeroy probable cause to search the Defendants' SUV. The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998).

The "automobile exception" to the warrant requirement permits a law enforcement officer to search a vehicle without a warrant "if the officer has probable cause to believe that the automobile contains contraband." *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009) (citing *Carroll v. United States*, 267 U.S. 132, 149 (1925)). As our supreme court explained:

> The rationale for the automobile exception is two-fold. First, it is often impractical for officers to obtain search warrants in light of the inherent mobility of automobiles. Second, individuals have a reduced expectation of

> privacy in their automobiles. If the officer has probable cause to believe that the automobile contains contraband, the officer may either seize the automobile and then obtain a warrant or search the automobile immediately.

*Id.* (internal citations omitted).

Here, Investigator Pomeroy testified that he smelled marijuana coming from the Defendants' SUV. According to published case law by this court and our supreme court, the smell of marijuana alone can establish probable cause for the warrantless search of an automobile. *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976); *Hicks v. State*, 534 S.W.2d 872, 874 (Tenn. Crim. App. 1975). The Defendants assert that the plain smell of marijuana no longer establishes probable cause for a warrantless search because, as Investigator Pomeroy testified, the smell of marijuana is indistinguishable from the smell of hemp, which is now legal in Tennessee. We recognize that marijuana previously was defined as "all part of the plant cannabis, whether growing or not" but that the definition did not include industrial hemp. Tenn. Code Ann. § 39-17-402(16)(A), (C) (2018). In April 2019, the possession of all hemp became legal in Tennessee. *See* Tenn. Code Ann. § 39-17-402(16)(C) (2019). However, until our supreme court or our legislature determines otherwise, the smell of marijuana continues to establish probable cause for the warrantless search of an automobile.[1] In any event, given our conclusion in the previous section that Mr. Hampton's initial statements about the marijuana were not the result of a custodial interrogation, his statements established probable cause for the warrantless search. Therefore, we conclude that the trial court also erred by granting the Defendants' motion to suppress the evidence found in their SUV.

---

[1] As noted by the Defendants, in January 2019, Senate Bill 279 was introduced to amend Tennessee Code Annotated, Title 40, Chapter 7, Part 1, by adding a new section to prohibit law enforcement officers from conducting warrantless searches based solely on the smell of cannabis. *See* https://www.capitol.tn.gov/Bills/111/Bill/SB0279.pdf. However, the bill and its companion, House Bill 274, which also was introduced in January 2019, failed to move forward. *See* https://wapp.capitol.tn.gov/apps/Billinfo/default.aspx?BillNumber=SB0279&ga=111 .

## CONCLUSION

Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court erred by granting the Defendants' motions to suppress. Therefore, we reverse the trial court's orders granting the motions, vacate the order dismissing the indictment, and remand the case to the trial court for further proceedings consistent with this opinion.

_____
JOHN W. CAMPBELL, SR., JUDGE