IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2012

## STATE OF TENNESSEE v. RICARDO DAVIDSON

**Direct Appeal from the Circuit Court for Maury County**
**No. 09-18969     Jim T. Hamilton, Judge**

---

**No. M2010-02002-CCA-R3-CD - Filed May 17, 2012**

---

A Maury County jury convicted the Defendant, Ricardo Davidson, of possession of more than 300 grams of cocaine with intent to sell within a Drug Free School Zone, possession of over ten pounds of marijuana with intent to sell within a Drug Free School Zone, conspiracy to possess over 300 grams of cocaine within a Drug Free School Zone, and conspiracy to possess and deliver over ten pounds of marijuana in a Drug Free School Zone.  The trial court sentenced him to an effective sentence of fifteen years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress evidence that he says was obtained pursuant to an invalid search warrant.  After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Ricardo Davidson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Mike Bottoms, District Attorney General; and Brent A. Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A.  Motion to Suppress**

This case arises from law enforcement officers' interception of a mailed package that

was believed to contain drugs. After obtaining a search warrant to open the package, the officers discovered it contained drugs. They then delivered the package to the intended address, where they also executed a second search warrant and found more drugs. A Maury County grand jury indicted the Defendant for four felony drug offenses and possession of drug paraphernalia. The Defendant filed a motion to suppress the evidence obtained as a result of the search warrants.

At the first hearing on the motion to suppress, neither party presented evidence other than the search warrants themselves. The parties offered the trial court arguments based upon the warrants. The defense argued that there was no nexus between the affidavit and the address searched. Defense counsel noted that this case involved a suspicious UPS package that was opened, and, based upon its contents, law enforcement officers obtained a search warrant. Defense counsel assumed that the address for which they obtained the search warrant was the address to which the UPS package was addressed, but defense counsel argued that nothing in the affidavit alleged that fact.

The State conceded that the affidavit supporting the search warrant never specifically stated that the address that law enforcement officers sought to search was the same address as that listed on the UPS package. The State asserted, however, that when the search warrant was read as a whole, it was obvious from the search warrant that such was the case. The State further noted that the affidavit stated that the officer swearing to the affidavit believed, based upon his knowledge and experience, that the two people listed in the affidavit, who were the occupants of 638 Mooresville Pike, Columbia, Tennessee, were anticipated to take possession of the package.

Defense counsel countered that the package was addressed to a man named "Jerry Fryson" and not to the Defendant. Defense counsel then asked to file an amended motion based upon the law enforcement officer's alleged "intentional" act of omitting the address of the recipient of the package when seeking a search warrant for the Defendant's residence. The trial court granted the Defendant's request to file an amended motion and set a hearing for a later date.

At the hearing on the amended motion to suppress, the parties presented the following evidence: Michael Perez, a Nashville Drug Task Force officer, testified that this investigation began on July 2, 2007. On that day, he received a phone call from "Andy," an officer with the Los Angeles Police Department who worked in the parcel narcotics unit. Andy advised Officer Perez that there was a package that he suspected contained narcotics or narcotics proceeds coming to Columbia, Tennessee, from the Los Angeles area. Based upon this information, Officer Perez contacted Special Agent Mabry with the Tennessee Bureau of Investigation and asked if he had a law enforcement contact in the Columbia area. Agent

Mabry confirmed he did have a contact and called the Maury County Sheriff's Department for assistance in a potential controlled delivery of the package.

Officer Perez testified that he and Agent Mabry, along with other officers, went to the UPS facility before the package was placed on the outgoing delivery truck. The officers used a K-9 drug dog, trained as a drug detector, to identify whether the package may, in fact, be emanating odors of narcotics. The drug dog indicated positively on the package, which was addressed to Jerry Fryson. The address was listed as 638 Mooresville Pike in Columbia, Tennessee. Officer Perez said, based upon this information, the officers obtained a search warrant to open the package. Inside the package, they found foam under which was located marijuana. Officer Perez said that, upon finding the marijuana, the officers did not disturb the package further, hoping to successfully conduct a controlled delivery of the package.

Officer Perez testified that he went with Maury County Sheriff's Department officers as they executed "an anticipatory search warrant" at the address listed on the package. He said he did not personally identify who lived at that address, and he was not involved further in the investigation until after the execution of the second search warrant.

On cross-examination, Officer Perez testified that he attempted to determine whether Jerry Fryson was a real person. He explained that he searched the Tennessee driver's license files for a "Jerry Fryson." Officer Perez read from the affidavit requesting the search warrant, wherein another officer, Officer Brian Cook, swore that the search revealed that there was no person with the name Jerry Fryson licensed in the State of Tennessee. The affidavit further stated that individuals dealing in controlled substances very often create false names for parcels to conceal their true identities.

Officer Brian Cook, with the Maury County Sheriff's Department, testified that he was assigned to the Drug Task Force in 2007. He said that he was present on July 3, 2007, when the suspicious box was opened at the UPS facility. Upon opening the package, officers discovered that it contained illegal narcotics, and they resealed the package for a controlled delivery. Officer Cook said he typed an "anticipatory search warrant" to serve on the residence after delivery of the package. Officer Cook said he listed "Jerry Fryson" as one of the people to be searched, but he did not specifically indicate in the warrant that the package was addressed to "Jerry Fryson."

Officer Cook testified that the affidavit indicated that, based upon Officer Cook's belief and training, "Miss Malave and Mr. Davidson are the current residen[ts] at 638 Mooresville Pike, and they are who the said package is intended to be delivered." The officer agreed that the affidavit does not state in "plain language" that the package was addressed to 638 Mooresville Pike.

3

On cross-examination, Officer Cook testified he did not intentionally omit from the affidavit that the package was addressed to Fryson but stated that he listed him as a person to be searched. He further stated that, after learning the package was addressed to 638 Mooresville Pike, he and another officer, Lieutenant Bill Doelle, drove by that address and ran the vehicle tags of the two cars parked at the residence. One of the two cars was registered to Dana Malave. When the officer ran Malave's name through law enforcement computer programs, the programs listed the Defendant as her acquaintance who also lived at the same address. Officer Cook testified that the package was successfully delivered to 638 Mooresville Pike and that it contained around three pounds of marijuana and a kilogram of cocaine.

On redirect examination, Officer Cook testified that he checked to see if either Malave or the Defendant were suspected drug traffickers, and they were not. He agreed that the only link between Malave, the Defendant, and the package was that they were residents of the address listed on the package.

Upon questioning by the trial court, Officer Cook testified that the marijuana contained in the box had a value of $3,000 and the cocaine had a value of $26,000.

The trial court denied the Defendant's motion to suppress. In so doing, it found:

The Fourth Amendment of the US Constitution, and the corresponding provisions of the State Constitution, do not absolutely prohibit searches. They just prohibit unreasonable searches and seizures.

In this case, State and local officers, based on reliable information from fellow officers in California, began an investigation. That investigation was of a package addressed to 638 Mooresville Pike, they first p[erus]ed the interior of the package to confirm whether it did contain controlled substances, and they confirmed at least one controlled substance in the package before we sought the second warrant, and performed then the delivery and the eventual execution of that second warrant.

I think the second warrant, as I said in February, on its face, states or implies – and I'll have to say, mostly implies – that the package is addressed to 638 Mooresville Pike, and to one or more of those persons that resided there.

They had gone far enough to investigate the vehicles and who those vehicles were registered to at that address, and naming people that they believed to be living there, based on their investigation, and that they had reason to

4

believe, based on their experience, which I think people with sufficient experience may state opinions, in court, and certainly in search warrants.

And that they had some reason to believe that Mr. Fryson may not exist, but at the same time, there may be someone there at the residence with that same spelling or a phonetic similarity to that spelling. And the magistrate had probable cause, based on what was contained within the four corners of the second . . . affidavit, a part of Exhibit 1, to issue that second warrant, which was a part of Exhibit 1.

If the magistrate has the authority to also consider what he did an hour and 35 minutes earlier, at 8:55, before the 10:30 second warrant, there is even stronger proof that Jerry Fryson . . . did not appear to exist, as a person licensed to drive a vehicle in Tennessee, and that it was appropriate to look at who might reside at that residence for probable cause purposes.

[Defense Counsel], the reason I asked about the value of the substance, there is pretty strong proof that someone is not going to mail $39,000.00 worth of controlled substances to an address on Mooresville Pike if they have absolutely no idea about who is going to get it. And the people that live at that address are the most likely people to receive it.

So somebody that put that address on a box must have expected the occupants of that residence to be the ultimate recipient of the intended delivery. And I've not heard any evidence in this record that anyone named Jerry Fryson or Jerry Frierson, which we have a number of Friersons in Maury County, lived at that address or that there was any mistaking the 638 address, or that this package was intended for anyone other than persons in possession of [the residence at] 638 Mooresville Pike.

. . . .

I believe you can make reasonable inference from the facts stated, and the facts stated here are that they anticipate delivering this box to 638 and that these two defendants are the occupants of that residence. And that, therefore, it's reasonable, under the Constitution, to conduct a search of those premises and the people in charge or in possession of those premises.

**B. Trial**

After the trial court denied the Defendant's motion to suppress, it held a trial. The Defendant does not appeal the sufficiency of the evidence supporting his convictions, limiting his appeal to whether the trial court erred when it denied his motion to suppress, so we will briefly summarize the facts presented at trial in the light most favorable to the State.

On July 2, 2007, DEA Task Force Officer Michael Perez received information from Los Angeles Police Department Detective Andrew Smith that a suspicious package was coming to Columbia, Tennessee, via UPS. The package was addressed to Jerry Fryson and was to be delivered to 638 Mooresville Pike in Columbia, Tennessee. Agent Mabry attempted unsuccessfully to locate an individual by the name "Jerry Fryson" in public databases. Agent Mabry was not surprised by his failure to locate a "Jerry Fryson" because, he said, packages of this nature often bear a fictitious name.

Officers went to the UPS facility with a K-9 drug dog officer. The K-9 officer smelled several packages and alerted officers to a package addressed to "Jerry Fryson." Based upon the information from the Los Angeles Police Department officer and the K-9 officer's alert, officers obtained a search warrant to open the package, and, when they did, they found a white foam packaging material beneath which was a leafy green substance that they deemed was narcotics. Once the officers confirmed there were narcotics inside the box, they put the box back together so it could be delivered to the address in order to identify the intended recipients of the illegal drugs in a controlled manner.

Officers applied for and were granted an "anticipatory search warrant." The warrant required that certain events happen before the warrant could be executed. In this case, the package had to be delivered to the house before the warrant could be executed. The search warrant included the names Jerry Fryson, Dana Malave, and the Defendant as the potential people to be searched.

While other officers conducted surveillance, Officer James Whitsett, who was assigned to the DEA in Nashville, delivered the box. Officer Whitsett, dressed as a delivery man, took the box to the residence. There, the Defendant approached him and said that the package belonged to him. Officer Whitsett handed the Defendant the package, and the Defendant set it down and then picked it back up and took it to an "outbuilding" or "little barn" that was adjacent to the residence. Once the box was delivered, officers executed a search warrant on the residence and the outbuilding where the Defendant had taken the box. Officers found the box and noted that it had not yet been opened. In the shed, officers also found plastic baggies on a work bench, a large box that contained scales, and a duffle bag that contained large blocks of marijuana and a Bible. The Bible contained writing that said that it had been presented to "Jason Coleman." Officers also found a pistol inside the house on top of one of the kitchen cabinets. Also in the kitchen, officers found a letter bearing the name "Jay

6

Coleman" and listing his address as Wasco State Prison. The letters, written in April and August 2006, were read into evidence and seemingly discussed some illicit activity. Other mail found inside the residence linked Malave and the Defendant to the residence.

In the master bedroom of the residence, officers found a plastic tote that contained marijuana, plastic wrap, a set of scales, paper plates with some loose marijuana, a utility knife, and a bag that contained plastic baggies.

Officers interviewed the Defendant, who initially said that he did not know what was in the package and that it belonged to Malave. Later, the Defendant said that he had been receiving packages for a man named "Jay Coleman." Officer Whitsett was familiar with Coleman and had previously investigated him previously for carrying large sums of currency. Coleman had been arrested on several occasions for drug related activity in both Tennessee and California. The Defendant told officers that he received $500 for accepting each package, and, while he was unsure what the packages contained, he believed they contained narcotics. Officers attempted without success to contact "Jay Coleman." The Defendant also told police officers that the marijuana discovered in his bedroom did not belong to him. He said that he was waiting for someone to come and pick it up.

TBI Agent Jennifer Sullivan analyzed the substances contained in the package. She determined that the box contained 28.8 pounds of marijuana and 996.4 grams of cocaine, 6 tenths of a gram less than a kilogram of cocaine. Agent Sullivan also tested the digital scales found in the residence and found cocaine on the scales. Lieutenant William Doelle testified that the street value of the marijuana was almost $60,000, and the street value of the cocaine was $99,640 if it remained in the powder form and up to $400,000 if the cocaine was altered into crack cocaine.

Officers measured the distance from the Defendant's house to a nearby child care facility. They determined that the residence was less than 1000 feet from a licensed day care facility.

The Defendant offered evidence that he raced motorcycles locally and also fixed them in his shop. The defense presented multiple police officers who testified that they had paid the Defendant to work on their motorcycles either at the Defendant's motorcycle shop or at the Defendant's house. In order to obtain parts to fix the motorcycles, the Defendant ordered and received many packages containing motorcycle parts, which were usually delivered by UPS or FedEx.

Regarding the events that surrounded the Defendant's arrest, Sheila Duke testified that she and her children went to a cookout at the Defendant's house on July 2, 2007, at around

6:00 p.m. Her boyfriend, Mark Booker, met them there later that night. Duke recalled that the Defendant, the Defendant's girlfriend, Dana Malave, and a man named "Jay" were present. Mark Booker testified that "Jason Coleman" was at the Defendant's house on July 2, 2007, while they were "cooking out." He said he knew Coleman through the Defendant and knew that Coleman raced four-wheelers.

Dana Malave testified that she and the Defendant had three children and that, in July 2007, the Defendant worked on motorbikes out of a shed at their home. Malave said she knew Jason Coleman. Coleman had purchased a motor bike from the Defendant, and on July 2, 2007, Coleman was at their house intermittently, leaving and returning several times. Coleman ate dinner with them and left for the last time at around 9:30 p.m. Malave said that, when she went into her bedroom after Coleman left, and there was a plastic tote in the bedroom. The Defendant told her that Coleman had left the tote and would return later that evening to retrieve it. Coleman, however, never returned to retrieve the tote. Malave claimed that neither she nor the Defendant knew the contents of the tote.

The Defendant testified and explained that he often ordered and received packages of motorcycle parts for his motorcycle repair work. He said that he used plastic wrap to wrap motors, and he used plastic bags to organize motorcycle parts. He explained that he used scales to weigh nitrous oxide, which he used to make motorcycle engines faster. The Defendant said that he knew Jason Coleman and that the two met approximately three years before the Defendant's arrest when Coleman brought him a bike to repair. He said he fed Coleman's dogs while Coleman was incarcerated. The Defendant confirmed that Coleman brought a blue tote to his house on July 2, 2007, saying he would return shortly to retrieve it. The Defendant said Malave told him the tote smelled and asked him to remove it. The Defendant said he was expecting a package of motorcycle parts on July 3, 2007. They were to be delivered by UPS, and, when the UPS man arrived, he assumed the box contained the parts he was anticipating. The Defendant denied knowing the package contained drugs and denied having an agreement with Coleman to receive the package in exchange for $500.

Based upon this evidence, a jury convicted the Defendant of possession of more than 300 grams of cocaine with intent to sell within a Drug Free School Zone, possession of over ten pounds of marijuana with intent to sell within a Drug Free School Zone, conspiracy to possess over 300 grams of cocaine within a Drug Free School Zone, and conspiracy to possess and deliver over ten pounds of marijuana in a Drug Free School Zone.

## II. Analysis

The Defendant contends that the trial court erred when it denied his motion to suppress items discovered during the execution of the search warrant. He asserts that the "anticipatory"

8

search warrant, considered alone, failed to establish probable cause because the supporting affidavit failed to specifically state how the officer had acquired any information relating to the UPS package and failed to provide the reliability of his sources in reference to the package. Further, he contends that the warrant listed the wrong tracking number for the package, and that this was not a typographical error, making the warrant invalid. Finally, he asserts that the affidavit accompanying the warrant contains misleading information. The State counters that the affidavit was sufficient to establish probable cause. We agree with the State.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23.

We begin our analysis with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Similarly, article I, section 7 of the Tennessee Constitution provides:

> [P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to

liberty and not to be granted.

Tenn. Const. art. I, § 7.

"[A] search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause of its issuance."[1] *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause to issue a search warrant, an affidavit must supply reasonable grounds for suspicion that an illegal act is occurring. *Id.* Thus, the need for the magistrate to make a neutral and detached decision regarding the existence of probable cause requires that the affidavit contain more than mere conclusory allegations by the affiant. *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992).

An affidavit must show a nexus between the criminal activity, the place to be searched, and the items to be seized in order to give a magistrate probable cause to issue a warrant. *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). When the affidavit contains no direct evidence of such a nexus, "we must . . . determine whether it was reasonable for the magistrate to infer that the item of contraband listed in the affidavit would be located" in the place to be searched. *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009).

Our Supreme Court has embraced the use of "anticipatory search warrants." *State v. Coker*, 746 S.W.2d 167, 172 (Tenn. 1987). Such warrants do not violate the fourth amendment if they are executed following delivery of the contraband. *State v. Wine*, 787 S.W.2d 31, 33 (Tenn. Crim. App. 1989). "The affidavit should inform the magistrate that the known or suspected contraband will be delivered in the immediate future and the basis for the affiant's knowledge that the item will be delivered." *Id.* (citing *United States v. Outland*, 476 F.2d 581 (6th Cir. 1973)). For example, the *Coker* Court found the affidavit in support of the anticipatory warrant to be sufficient where the affiant specifically alleged how the item to be seized would arrive on the premises to be searched. *Coker*, 746 S.W.2d at 172. It is also recommended that a magistrate who issues an anticipatory search warrant condition its execution upon the occurrence of a specified event, such as the delivery of the targeted package. *Wine*, 787 S.W.2d at 33. *See generally*, 2 W. LaFave, Search and Seizure § 3.7(c) at 96 (2nd Ed. 1987).

In this case, the affidavit in support of the search warrant read:

[t]here is probable cause to believe that Jerry Fryson, Ricardo Davidson, and

---

[1]An exception to this is an "anticipatory search warrant," which will be discussed below.

Dana Malave or the occupants of . . . 638 Mooresville Pike, Columbia, Maury County Tennessee . . . are in possession and control of certain evidence of a crime . . . and that evidence of said crimes will be found at [that address].

In the section, "Statement of Facts," supporting probable cause, Officer Brian Cook informed the court that:

On July 2nd 2007, your affiant received information from Task Force Officer Mike Perez of the D.E.A. about a UPS parcel labeled with tracking number 1Z91E1190152026318 that was shipped to Columbia[,] TN from Los Angeles CA. The information about the parcel came from Andrew Smith a Los Angeles Police Department Police Officer assigned to the LAPD parcel squad of the narcotics Division. According to Officer Smith the shipping process utilized for the parcel is consistent with previous interdicted parcels which have contained narcotics/controlled substances.

On July 3rd 2007, your affiant learned that Task Force officer Mike Perez came in contact with the UPS parcel with tracking number 1Z91E1190152026318 at the Columbia TN UPS hub. Canine officer Kyle Cheek along with canine drug detector Diesel conducted a sweep for the odor of narcotics on three similar parcels including the UPS parcel labeled with tracking number 1Z91E1190152026318 . According to Canine handler Cheek, canine drug detector Diesel exhibited behavio[r] consistent with narcotics odor identification em[a]nating from the UPS parcel labeled with track[i]ng number 1Z91E1190152026318.

On July 3rd 2007, Task Force Officer Mike Perez obtained a search warrant for the UPS parcel with tracking number 1Z91E1190152026318. Upon issuance of the search warrant for the UPS parcel with tracking number 1Z91E1190152026318, your affiant located one package of marijuana within the parcel.

The affidavit goes on to state that based upon the experience and knowledge of the affiant:

[D]rug traffickers will have bogus names put onto the packages in an attempt to hide their true identity. Your affiant along with Lt. Bill Doelle did drive by the residence and did run two vehicle tags with one coming back to a Dana Malave at 638 Mooresville Pike and when checking on Miss Malave's name through numerous computer look up programs did come across the name [the

11

Defendant] as a residen[t] at the same address. Therefore it is your affiant[']s belief and training that Miss "Malave and [the Defendant] are the current residen[ts] at 638 Mooresville Pike and they are who the said package is intended to be delivered to.

After reviewing the affidavit, we conclude that it established probable cause for the magistrate to issue the anticipatory search warrant. The Defendant notes that the tracking number was listed incorrectly and rendered the warrant invalid. The State correctly asserts that the Defendant waived this issue by failing to address it in either his motion to suppress or the suppression hearing. *See State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005). Further, unquestionably, clerical or typographical errors will not invalidate an otherwise valid search warrant absent a showing of prejudice to the defendant. *See Collins v. State*, 184 Tenn. 356, 199 S.W.2d 96, 97 (1947) (holding conflict in dates of affidavit, warrant, and filing notation did not invalidate warrant); *see also State v. Jimmy David McElroy*, No. E2003-00943-CCA-R9-CD, 2004 WL 86178, at *3 (Tenn. Crim. App., at Knoxville, Jan. 20, 2004), *no Tenn. R. App. P. 11 application filed*. In this case, it that appears that the tracking number was a typographical error, especially in light of the specificity with which the circumstances surrounding the interception of the package were described.

We further conclude that the affidavit included specific language about how the package would arrive at the residence and about the officer's intention to search the residence once the package was delivered and accepted by the resident. It is true that the affidavit does not state that the package was addressed to Jerry Fryson; however, it does state that he is one of the people whom officers intended to search. The warrant states with specificity how the officers learned the identity of the occupants at the address and why the officer concluded that they were likely the intended recipients of the package. We conclude that the trial court did not abuse its discretion when it denied the Defendant's motion to suppress the evidence obtained as a result of this warrant. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE