IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2013

## STATE OF TENNESSEE v. WESLEY CLAYTON NIGHTWINE and RUBY MICHELLE BUSH

**Appeal from the Circuit Court for Montgomery County**
**No. 41201104, 41201103      John H. Gasaway, Judge**

───────────────

**No. M2013-00609-CCA-R3-CD - Filed December 17, 2013**

───────────────

The Defendants, Wesley Clayton Nightwine and Ruby Michelle Bush, were indicted by the Montgomery County Grand Jury for various drug and firearms offenses following the execution of a search warrant at Mr. Nightwine's residence.  The Defendants filed a motion to suppress the evidence seized, and the trial court granted that motion and dismissed the case as to each defendant.  The State appeals, asserting that the search warrant was valid and the evidence was admissible.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Jacob W. Fendley and Debra A. Wall, for the Defendants-Appellees, Wesley Clayton Nightwine and Ruby Michelle Bush.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; John W. Carney, District Attorney General; and John Finklea, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In March 2012, Officer Luis Zapata, a narcotics investigator with the Montgomery County Sheriff's Office, received information that Wesley Clayton Nightwine was selling marijuana from a residence in Clarksville, Tennessee.  Over the course of the next several months, Officer Zapata and other Montgomery County officers investigated Mr. Nightwine

and conducted several controlled buys of marijuana using a confidential source. In July 2012, the officers obtained and executed a search warrant for a residence located at 115 Emory Street in Clarksville, Tennessee. During this search, the officers discovered cocaine, marijuana, digital scales, and a 9 mm Ruger semi-automatic pistol. This discovery led to the arrests and subsequent indictments of Wesley Clayton Nightwine and Ruby Michelle Bush on drug and firearms charges.

On January 18, 2013, Mr. Nightwine filed a motion to suppress evidence arising out of the search of his residence, which Ms. Bush subsequently joined. A hearing was held on February 7, 2013. No testimony was presented at the hearing. The trial court reviewed the affidavit in support of the search warrant and heard arguments from counsel regarding the warrant's validity. The affidavit presented the following facts in support of probable cause:

> In early March 2012[,] your Affiant received information that Wesley Clayton Nightwine was selling marijuana at 823 Stafford St[.] Clarksville[,] Tennessee.
>
> A criminal history check on Wesley Clayton Nightwine revealed a history of numerous narcotic offenses.
>
> Wesley Clayton Nightwine is listed in the Tennessee Driver License Database as having 823 Stafford St[.] in Clarksville[,] Tennessee as his residence.
>
> During the investigation it was discovered that Wesley Clayton Nightwine had moved and actually lives at 115 Emory St[.] Clarksville[,] Tennessee.
>
> In the fourth full week (seven day period) of March 2012, Agent Oliver conducted a controlled narcotics purchase using a confidential source. During this controlled narcotics purchase the confidential source purchased [a] misdemeanor amount of plant material purported to be marijuana from Wesley Clayton Nightwine at 823 Stafford St[.] in Clarksville[,] Tennessee. Agent Oliver listened to the aforementioned narcotics purchase. Agent Oliver field tested a portion of the plant material and it was positive for marijuana.
>
> In the second full week (seven day period) of April 2012, Agent Oliver conducted a second controlled narcotics purchase using a confidential source. During this controlled narcotics purchase the confidential source purchased [a] misdemeanor amount of plant material purported to be marijuana from Wesley Clayton Nightwine at 823 Stafford St[.] in Clarksville[,] Tennessee. Agent Oliver listened to the aforementioned narcotics purchase. Agent Oliver field tested a portion of the plant material and it was positive for marijuana.

In the second full week (seven day period) of July 2012, Agent Oliver conducted a third controlled narcotics purchase using a confidential source. During this controlled narcotics purchase the confidential source purchased [a] misdemeanor amount of plant material purported to be marijuana from Wesley Clayton Nightwine at 115 Emory St[.] in Clarksville[,] Tennessee. Agent Oliver listened to the aforementioned narcotics purchase. Agent Oliver field tested a portion of the plant material and it was positive for marijuana.

In the last 72 hours[,] your Affiant has conducted another controlled narcotics purchase using a confidential source. During this controlled narcotics purchase the confidential source purchased [a] misdemeanor amount of plant material purported to be marijuana from Wesley Clayton Nightwine at 115 Emory St[.] in Clarksville[,] Tennessee. Your affiant listened to the aforementioned narcotics purchase. Your affiant field tested a portion of the plant material and it was positive for marijuana.

Before each one of the listed controlled narcotics purchases and at the conclusion of each one of the listed controlled narcotics purchases[,] the confidential source's person and vehicle were searched for weapons and narcotics. No weapons or narcotics were found on the confidential source's person or in their vehicle.

Your affiant['s] intentions were to purchase felony amounts of marijuana on each narcotic transaction but was shorted each time by Wesley Clayton Nightwine.

Said confidential source has provided your Affiant with information on narcotics sales and manufacturing which has proven to be true and correct. This confidential source is familiar with the habits and practices of people who sell illegal narcotics. This confidential source is familiar with the packaging, distribution and sale of illegal narcotics. This confidential source has proven to be credible and reliable with the information provided on the sale of illegal narcotics in the Montgomery County area.


Experience and Basis of Knowledge of Affiant

Affiant has participated in the execution of over 30 search warrants where the subject of the search has been an investigation into narcotics trafficking and/or

manufacturing. Your affiant has attended numerous federal and state workshops and seminars on investigation of drug trafficking. Your affiant has participated in numerous drug investigations which have led to felony convictions in state court on drug charges. Your affiant is aware of the habits, characteristics, and practices of drug offenders.

Following the hearing, the trial court and the prosecutor had the following colloquy:

THE COURT: Their argument is, as I take it, that the – that the reference to the street address is insufficient on its face to provide a sufficient nexus to justify going in the house. So my question is: Can you help me out there? Can you direct me where it is within this document that this confidential informant sets out where he saw the drugs?

[THE STATE]: It – it does not. The court has to go on the face of the document that's set . . .

. . .

THE COURT: That's – that's the argument – one of the arguments, as I understand it, is that if you read this warrant, you don't – you can't tell from the warrant whether the [confidential informant] saw purchases being made inside the residence, on the front porch, out in the yard. Maybe the person – maybe the seller had – the defendant had the dope on him and was selling it, you know, to people as they drove by in their cars.

You know, I don't know whether this was – that's the problem I have with it; the nexus, we all know that you got to have a nexus, you got to have a reason to go inside that house because you got to have probable cause to believe that the – that the contraband is inside the house. Inside the house. So. And I just wasn't familiar with the warrant. I thought maybe that I wasn't seeing it where it says – where the CI says, you know, I went inside the house; I was inside there; I saw three, four people come in on different occasions; he sold dope, you know; there's nothing like that.

Based on this reasoning, the trial court concluded that there was an insufficient nexus to allow the search of Mr. Nightwine's residence and entered a written order setting out the same. In the written order, the trial court found that the affidavit "fail[ed] to state that the confidential source made the purchases from inside the residence since it use[d] the language 'at 115 Emory Street,'" and concluded that "no reasonable nexus exists to issue the [s]earch

[w]arrant to [s]earch inside of the residence." Accordingly, the trial court granted the defendants' motion to suppress and dismissed the case as to each defendant.

It is from this order that the State now appeals.

## ANALYSIS

On appeal, the State argues that the trial court erred in granting the defendants' motion to suppress because the affidavit established a sufficient nexus between the alleged criminal activity and the residence to be searched. The State maintains that the "distinction the trial court makes between the buys occurring 'at' the residence – as the affidavit states – and not 'in' the residence is immaterial," and that a "common-sense reading" of the affidavit provided probable cause to search Mr. Nightwine's residence. The defendants respond that the trial court did not err in granting the motion to suppress because the affidavit does not establish a sufficient nexus. Upon review, we agree with the defendants.

The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996)). However, "[t]he application of the law to the facts found by the trial court . . . is a question of law which this court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In analyzing this issue, we are guided by the following well established principles of Fourth Amendment jurisprudence. "When reviewing the issuance of a search warrant, this Court must determine whether the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." State v. Hayes, 337 S.W.3d 235, 256 (Tenn. Crim. App. 2010). "This Court may consider only the affidavit in reviewing whether the issuance of a search warrant is based upon probable cause. We may not consider any evidence that was not included in the affidavit but was known by the affiant or provided to or possessed by the issuing magistrate." State v. Smotherman, 201 S.W.3d 657, 661 (Tenn. 2006) (citations omitted). "The magistrate's judgment is entitled to great deference on appeal." Hayes, 337 S.W.3d at 256.

The United States and Tennessee Constitutions state that search warrants shall issue only upon probable cause. U.S. Const. amend. IV; Tenn. Const. Art. 1, section 7. "As a general rule, a search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause for its issuance." State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999) (quoting State v. Jacumin, 778 S.W.2d 430,

431 (Tenn. 1989)) (citing State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992)). A showing of probable cause generally requires "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Johnson, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993) (citing Lea v. State, 181 S.W.2d 351, 352 (Tenn. 1944)). "In order to establish probable cause, an affidavit must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." Norris, 47 S.W.3d at 470 (citing State v. Longstreet, 619 S.W.2d 97, 99 (Tenn. 1981)). "A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) [of the Tennessee Rules of Criminal Procedure] to suppress any evidence obtained in the unlawful search or seizure." Tenn. R. Crim. P. 41(g).

"To establish probable cause, the affidavit must show a nexus among the criminal activity, the place to be searched, and the items to be seized." State v. Saine, 297 S.W.3d 199, 206 (Tenn. 2009) (citing State v. Reid, 91 S.W.3d 247, 273 (Tenn. 2002); State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993)). The Tennessee Supreme Court explained that when determining whether a sufficient nexus has been established, reviewing courts should "consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" Saine, 297 S.W.3d at 206 (quoting Reid, 91 S.W.3d at 275). Where the affidavit contains no direct evidence of such a nexus, we must determine "whether it was reasonable for the magistrate to infer that the items of contraband listed in [the] affidavit would be located" in the place to be searched. Saine, 297 S.W.3d at 206.

Relying on State v. Saine, the State argues that the affidavit in the present case provides facts "showing a sufficient connection between the observed activity and the location of the search." In Saine, officers set up a controlled buy using a confidential informant after receiving information that the defendant was selling cocaine. Id. at 203. The sale did not take place at the defendant's residence, but the affidavit explained that officers "observed [the defendant] leave his residence . . . and followed him as he traveled directly to the meeting place," and then "[a]fter the meeting, the [officers] followed [the defendant] as he returned directly to his residence and entered it." Id. The affidavit also stated that the detective, an experienced narcotics detective, had observed that drug dealers ordinarily "hide their drugs, the proceeds of drug sales, and financial records related to their business in secure locations such as their . . . residences . . . or other locations which they control." Id. The Tennessee Supreme Court acknowledged that the affidavit at issue "did not contain direct information connecting the objects of the search with [the defendant]'s residence." Id. at 206. The court noted, however,

[T]here need not be definite proof that the seller keeps his supply in his residence. . . . [I]t will suffice if there are some additional facts, (such as that . . . the seller or buyer went to his home prior to the sale or after the sale . . .) which would support the inference that the supply is probably located there.

Id. (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp. 2008-09) (footnotes omitted)). The court reasoned that the defendant's departure from his residence to the prearranged location, the sale of cocaine to the informant, and the subsequent return to his residence, coupled with the detective's experience that drug dealers ordinarily keep drugs and other evidence related to their business in their home, provided sufficient facts from which a magistrate "could reasonably infer that the supply of drugs was located in [the defendant]'s residence." Id.

In the present case, the State argues that, like in Saine, the affidavit provides facts "showing a sufficient connection between the observed activity and the location of the search." The State asserts that the distinction made by the trial court between "at" the residence and "in" the residence is immaterial, maintaining that the "location of the sales was Defendant Nightwine's house," and that "Defendant Nightwine was the person making the sales." Thus, according to the State, it was reasonable to infer that evidence of the criminal activity would be located inside of the residence, whether or not the sales actually took place inside of the residence. The State further argues that the evidence of "repeated sales" by Mr. Nightwine at 115 Emory Street strengthens the inference that drugs were being stored in Mr. Nightwine's residence and supports a finding of a sufficient nexus. The trial court rejected the State's arguments and concluded that the affidavit lacked the facts necessary to establish a sufficient nexus.

To begin our analysis, we note that the affidavit does not state, as the State suggests, that the sales took place *at Mr. Nightwine's residence* located at 115 Emory Street. Rather, the affidavit asserts only that the sales took place "at 115 Emory Street" without any further specificity as to the location of the sales or reference to the residence. The trial court properly refused to assume facts not provided within the four corners of the affidavit and instead based its conclusion solely on the contents of the affidavit. The court reasoned that it is unclear from the affidavit whether the sales took place "in the residence, on the front porch, out in the yard . . . [or] to people as they drove by in their cars," and concluded that "no reasonable nexus exists" to justify the search of the residence. We, likewise, are limited to the contents of the affidavit on review, and agree with the trial court's conclusion that the affidavit fails to establish a sufficient nexus to justify the search of the residence.

In Saine, the Tennessee Supreme Court placed heavy emphasis on the fact that the affidavit stated that officers "followed [the defendant] directly from his residence to the

prearranged location . . . [and] then followed [the defendant] directly back to his residence." See Saine, 297 S.W.3d at 206. The court reasoned that based upon these "additional facts," it was reasonable to infer that the supply of drugs would be located in the defendant's residence. The affidavit in the present case, however, stands in stark contrast to the affidavit in Saine and fails to supply the "additional facts" necessary to establish a sufficient nexus. Here, there are no facts to indicate that the officers observed Mr. Nightwine enter or exit the residence prior to the sales, during the sales, or after the sales. Likewise, there is no indication that the confidential informant ever entered the residence, observed Mr. Nightwine inside of the residence, or saw any narcotics inside of the residence. Beyond a physical street address, the affidavit is completely devoid of any specificity as to the location of the controlled buys or their relation to the residence located at 115 Emory Street. The only connection to the residence set out in the affidavit is a conclusory assertion that Mr. Nightwine resides at that location; however, the affidavit fails to explain the basis of this conclusion or provide any further connection to the residence. These facts fall far short of the "additional facts" in Saine and do not support the inference that Mr. Nightwine's drug supply would be located in the residence.

Additionally, the evidence of "repeated sales" by Mr. Nightwine at 115 Emory Street does not establish or strengthen the inference that drugs were being stored in Mr. Nightwine's residence. We acknowledge that the Saine court found persuasive the additional fact in the affidavit that in the detective's experience, drug dealers ordinarily keep drugs and other evidence of their business in the place where they reside. See Saine, 297 S.W.3d at 206-07. Notwithstanding, the affidavit in the present case still fails to establish a sufficient nexus. As an initial matter, we note that the affidavit does not include any reference to the affiant's experience with drug dealers and their routines for hiding evidence of their business. Even if we were to assume this fact, however, the affidavit fails to sufficiently connect the residence at 115 Emory Street with Mr. Nightwine or the drug sales. As noted above, the only connection set out in the affidavit between Mr. Nightwine and the residence is a single conclusory statement that officers "determined that Wesley Clayton Nightwine . . . lives at 115 Emory Street." There are no additional facts to connect Mr. Nightwine to the residence or to establish that he was in control of the residence. Cf. State v. Gleaves, No. M2009-01045-CCA-R3-CD, 2010 WL 3210397, at *6-7 (Tenn. Crim. App. April 21, 2010) (reasoning that a confidential informant's association of the defendant with the target residence along with officers' observations of the defendant entering and exiting the target residence justified the inference that the defendant was "in control" of the residence and established a sufficient nexus). Without more facts within the affidavit to tie Mr. Nightwine to the residence at 115 Emory Street, evidence of repeated sales by Mr. Nightwine cannot justify the search of the residence. The affidavit fails to establish a sufficient nexus between the criminal activity and the place to be searched. Accordingly, we conclude that the trial court did not err in granting the defendants' motion to suppress.

-8-

**CONCLUSION**

Based upon the foregoing authorities and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE