IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2022 Session

## STATE OF TENNESSEE v. ARIANA ELIZABETH MAJOR

**Appeal from the Circuit Court for Montgomery County**
**No. 2019-CR-1374          Jill Bartee Ayers, Judge**
**Robert T. Bateman, Judge**

_____

### No. M2021-01469-CCA-R3-CD
_____

The State of Tennessee appealed the Montgomery County Circuit Court's order granting the Defendant's motion to suppress evidence recovered during the search of her car. On appeal, the State contends that the trial court erred because probable cause existed to search the Defendant's car based on a police dog's signal for the presence of narcotics. We reverse the judgment of the trial court and remand the case for reinstatement of the charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ, J., joined. CAMILLE R. MCMULLEN, P.J., filed a concurring opinion, in which JUDGE GREENHOLTZ joined.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory D. Smith (on appeal) and Chason T. Smith (at trial and on appeal), Clarksville, Tennessee, for the appellee, Ariana Elizabeth Major.

### OPINION

This appeal involves whether, during a traffic stop, probable cause existed to search the Defendant's car based, in part, upon a positive signal from a trained police dog for the presence of narcotics. The police dog was certified in the detection of the odors of marijuana, methamphetamine, cocaine, and heroin. The issue before this court involves, in part, the dog's inability to distinguish between the odor of hemp, the possession of which

has been legal in Tennessee since April 4, 2019, and marijuana, the possession of which was illegal at the time and remains so.[1]

Following the traffic stop and search, the Defendant was indicted for criminal impersonation; driving while her license was canceled, suspended, or revoked; possession with the intent to manufacture, sell, or deliver methamphetamine; possession with the intent to manufacture, sell, or deliver heroin; possession with the intent to deliver or sell fentanyl; and possession of drug paraphernalia. The Defendant filed a motion to suppress the evidence recovered during the search contending that the police dog's signal was unreliable because the dog could not distinguish between the smell of hemp and marijuana.

On July 28, 2020, the trial court granted the Defendant's motion to suppress. The State then dismissed certain charges, as the suppression resulted in the effective dismissal of the indictment. On appeal, the State contended that the trial court erred in granting the Defendant's motion to suppress because the police dog performed a reliable "free air sniff," which resulted in probable cause to search the Defendant's car. We dismissed the appeal on the basis that the State was not entitled to an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(c) because the record failed to reflect that the relevant indictment counts were dismissed by the trial court before the appeal. *See State v. Ariana Elizabeth Major*, No. M2020-01142-CCA-R3-CD, 2021 WL 4347273 (Tenn. Crim. App. Sept. 24, 2021). On November 15, 2021, after the dismissal of the first appeal, the trial court entered an order dismissing the relevant indictment counts. The State now renews its appeal of the suppression.

The relevant facts were set forth in the first appeal:

Clarksville Police Officer Robert Dill submitted an affidavit of complaint in connection with the Defendant's arrest. The affidavit reflects that on September 9, 2019, at 12:21 a.m., Officer Dill initiated a traffic stop of the Defendant's car for the failure to use a turn signal. The Defendant, who was alone, told the officer that her name was Ana Outlaw and provided a date of birth, but "no valid information could be found" for a person with this name. The Defendant consented to a search of her purse, and the officer found a "card" reflecting the Defendant's sister's name. Ultimately, the officer identified the driver as the Defendant, who admitted she lied about her identity because of an outstanding probation violation warrant, which

---

[1] Hemp is defined as Cannabis sativa containing not more than 0.3% Tetrahydrocannabinol (THC). Marijuana is defined as Cannabis sativa containing greater than 0.3% THC. *See* T.C.A. §§ 39-17-402 (2019) (subsequently amended); 43-27-101 (Supp. 2020) (subsequently amended).

was confirmed through a police database. A records check likewise reflected that the Defendant's driver's license was revoked on September 26, 2018. The Defendant was "placed into custody" for the probation violation warrant, driving while her license was revoked, and criminal impersonation.

A second affidavit of complaint was submitted by Officer Holden Hudgin and reflects that during the course of the traffic stop, Officer Dill asked for the Defendant's consent to search the car. The Defendant declined. Montgomery County Deputy Christopher Owens arrived at the scene with a police dog, which signaled for the presence of "narcotics" inside the Defendant's car. A search of the car revealed digital scales; a cut straw; and substances believed to be heroin, methamphetamine, and fentanyl under the driver's seat. The Defendant's driver's license was also found under the seat. The Defendant was charged for offenses related to the unlawful possession of controlled substances and drug paraphernalia.

After the return of the indictment, the Defendant filed a motion to suppress the evidence found during the search of her car. She argued that the officers lacked probable cause to search her car because the police dog could not distinguish between the smell of hemp[], a lawful substance, and marijuana and that, as a result, the dog's signaling for the presence of narcotics was unreliable.

At the suppression hearing, Montgomery County Sheriff's Deputy Christopher Owens testified that he had been the police dog's handler for more than three years. He said he obtained annual certifications to work as a police canine handler. He said that the dog in the present case had received training, as well, and that the dog was trained and certified to detect the presence of methamphetamine, marijuana, heroin, and cocaine. Relative to the dog's training to detect marijuana, Deputy Owens said that the dog was "imprinted by Moochie[2] with [straight] marijuana." Deputy Owens understood that hemp was a legal substance and stated that the dog had only been trained to detect marijuana. When asked if it were possible the dog might signal for the presence of narcotics if the substance was hemp, not marijuana, Deputy Owens stated, "He can." Deputy Owens stated that he could not determine which substance the dog signaled during a sweep but that any signal was related to the four substances the dog was trained to detect.

---

[2] The police dog training records reflect the trainer's name as "Moochi." We use "Moochie" as reflected in the transcript.

Deputy Owens testified that Officer Dill requested a "free air sniff" in the present case. Deputy Owens said that after he arrived at the traffic stop, he "tried to run [the police dog] on it." He said that he "had to empty [the dog] because he was not focusing. Once [the dog] focused, he indicated, and we searched" the car. When asked if he knew which substance the dog signaled during the sweep, Deputy Owens said the dog signaled for the presence of any of the four substances the dog was trained to detect. Deputy Owens agreed that marijuana was not found inside the Defendant's car.

On cross-examination, Deputy Owens testified that he began training with the police dog in January 2017. He agreed that in 2017, it was unlawful to possess hemp. He said that he and the dog had conducted sweeps more times than he could recall. He agreed that there had been incidents in which the dog had signaled for the presence of narcotics but that none were found upon conducting a search. He agreed that the dog could signal for the presence of narcotics based upon "transfer odor" if the smell of a substance lingered inside a vehicle.

Deputy Owens testified that Moochie was the last name of the person who worked for the vendor involved in the police dog's imprinting process. Deputy Owens could not explain the imprinting process but said that Moochie imprinted the dog and that afterward, Deputy Owens trained with the dog. Deputy Owens said he was not present when the dog was "certified." When asked if the dog was trained to smell a particular compound found in marijuana, Deputy Owens said, "All I know is he's trained on marijuana."

The police dog's training records were received as an exhibit and reflect that the dog received a K-9 Narcotic Detection Certification on May 20, 2019 by Officer Owens. The certification reflects that the dog was trained to detect marijuana, methamphetamine, cocaine, and heroin. The records contained more than fifty training exercises, most of which were successful. Many of the exercises involved non-narcotic items, including flashlights and shotgun shells. Other exercises involved the use of narcotics. . . .

*Id.* at *1-2.

In its written suppression order, the trial court found that the police dog had been trained to detect four drugs: marijuana, methamphetamine, cocaine, and heroin. The court found that Deputy Owens had no knowledge about the company that trained the dog, the procedures used for training the dog, or the dog trainer. The court noted that no specific information on the dog's "track record" as a drug dog was introduced into evidence, including how often the dog inaccurately signaled for the presence of narcotics. In granting the motion to suppress, the court stated

> Deputy Owens testified that [the dog] had no training on the distinction between illegal marijuana and legal hemp and would not be able to know the difference. Based on evidence presented of the K-9's training and track record in this matter, the [c]ourt does not find reliability of the canine to support probable cause.

On appeal, the State contends that the trial court erred by granting the motion to suppress because the dog's signal for the presence of narcotics established probable cause for a warrantless search of the Defendant's car. The Defendant counters that the dog's signal did not provide probable cause for a warrantless search of the Defendant's car. She argues that the dog was unreliable and therefore its positive signal for the presence of narcotics could not establish probable cause because the dog could not distinguish between hemp and marijuana.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). A trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. The Tennessee Supreme Court has interpreted these two provisions to be the same in intent and purpose. *See State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression" unless it is conducted pursuant to one of the narrowly-defined

exceptions to the warrant requirement. *Yeargan*, 958 S.W.2d at 629. "The 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe the automobile contains contraband." *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009); s*ee Carroll v. United States*, 267 U.S. 132, 149 (1925).

A positive alert from a dog trained to detect narcotics supplies probable cause for a search, provided that evidence exists to establish the dog's reliability to detect narcotics. *See, e.g.*, *State v. England*, 19 S.W.3d 762, 769 (Tenn. 2000). Reliability often turns on questions around the dog's training, conduct of the handler during the search, and the dog's track record for accurately detecting narcotics. *Id.* at 768 (citing *United States v. $80,760.00 In U.S. Currency*, 781 F. Supp. 462, 478 (N.D. Tex. 1991), for the proposition that "[r]eliability problems arise when the dog receives poor training, has an inconsistent record, searches for narcotics in conditions without reliability controls or receives cues from its handler"); *see State v. Terry Lamont Bowden*, No. M2016-02525-CCA-R3-CD, 2018 WL 2149731, at *6 (Tenn. Crim. App. May 10, 2018) (stating that determining a dog's reliability "includes consideration of the dog's training, the officer's training and experience with the dog, and the record of false negative and false positive alerts"); *State v. Jimmy Curtis Adkins*, No. E2009-02413-CCA-R3-CD, 2010 WL 2538656, at *7 (Tenn. Crim. App. Dec. 16, 2010), *perm. app. denied* (Tenn. May 25, 2011).

In the present case, the Defendant challenged the dog's reliability *solely* on the basis that the dog could not distinguish between hemp and marijuana. The Defendant did not raise any issues related to the dog's trainer, its handler, or its actual history of false positive or negative alerts. *Cf. State v. Mark David Bond*, No. M2022-00469-CCA-R3-CD, 2023 WL 5559259, at *3 (Tenn. Crim. App. Aug. 29, 2023) (noting that the defendant did not raise issues in the trial court about the dog's certification, its record of false positive or negative signals, or the handling officer's training and experience and limiting appellate consideration to the scope of the issue raised in the trial court). We consider the scope of the issue before us to be limited to whether probable cause existed for a search of the Defendant's car, despite the narcotics dog's inability to discern between the odor of hemp and marijuana.

As we have stated, the evidence received at the suppression hearing showed that the Defendant was stopped for a traffic offense and that she provided a false name and birthdate. She permitted Officer Dill to search her handbag, and he discovered another person's driver's license inside. The Defendant admitted that she lied and said she had an outstanding warrant, which Officer Dill determined was for violating her probation, and that her driver's license had been revoked, despite his having seen her driving her car. A trained narcotics dog then signaled for the presence of narcotics in the Defendant's car. The dog was trained to detect marijuana, methamphetamine, cocaine, and heroin, but not to discern hemp from marijuana.

- 6 -

Other panels of this court have recently concluded that probable cause existed to search a defendant's car on similar facts. *See State v. Andre JuJuan Lee Green*, No. M2022-00899-CCA-R3-CD, 2023 WL 3944057 (Tenn. Crim. App. June 12, 2023), *perm. app. filed* (Tenn. July 25, 2023); *State v. Mark David Bond*, No. M2022-00469-CCA-R3-CD, 2023 WL 5559259 (Tenn. Crim. App. Aug. 29, 2023). In *Andre JuJuan Lee Green*, officers conducted a traffic stop of the defendant's car and searched it after a trained dog signaled the presence of drugs. The officers found marijuana, a loaded handgun, and drug paraphernalia. The trial court suppressed the evidence resulting from the search because the dog could not distinguish between the smell of hemp and marijuana and, therefore, considered the dog to be unreliable. On appeal, this court reversed the trial court noting that "at this juncture[,] the binding precedent from the Tennessee Supreme Court allows the smell of marijuana to provide probable cause for a search." *Andre JuJuan Lee Green*, 2023 WL 3944057, at *3 (citing *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976)); *see Hicks v. State*, 534 S.W.2d 872, 874 (Tenn. Crim. App. 1975); *Mark David Bond*, 2023 WL 5559259, at *3; *State v. Stephan Paul Hampton and Margaret Mary Hampton*, No. W2021-00938-CCA-R3-CD, 2022 WL 16919950, at *6 (Tenn. Crim. App. Nov. 14, 2022); *State v. Frederic A. Crosby*, No. W2013-02610-CCA-R3-CD, 2014 WL 4415924, at *8 (Tenn. Crim. App. Sept. 9, 2014)). The court went on to note that "there is no practical difference for purposes of our analysis" whether a case involves an officer or a trained dog smelling marijuana. *Andre JuJuan Lee Green*, 2023 WL 3944057, at *3. Concluding that the "alert of a trained drug detection canine is alone sufficient [to establish probable cause]," the court also acknowledged that "the totality of the circumstances surrounding the stop bolster[ed] a finding of probable cause." *Id.*

In *Mark David Bond,* this court considered that

> [o]ther jurisdictions also have rejected claims that a drug detection canine's inability to distinguish between the odor of marijuana and the odor of hemp rendered the dog's reaction unreliable for purposes of establishing probable cause to conduct a search. *See, e.g., United States v. Deluca,* No. 20-8075, 2022 WL 3451394, at *5 (10th Cir. Aug. 18, 2022) (concluding that probable cause to search the defendant's vehicle existed due to the drug detection canine's reaction "even if [the canine] was trained to alert on hemp in addition to the other controlled substances"); *United States v. Hayes,* No. 3:19-CR-73-TAV-HBG, 2020 WL 4034309, at *20 (E.D. Tenn. Feb. 21, 2020) (rejecting the defendant's argument that "the legalization of hemp eliminates any probable cause gained from a trained and certified drug detection dog's alert" and concluding that "[a]n alert by a drug detection dog, trained to detect marijuana and other illegal narcotics, means there is a fair

probability, not an absolute guarantee, that one of the illegal narcotics, which the dog is trained to detect, will be found in that location").

*Mark David Bond*, 2023 WL 5559259, at \*4.

From these cases we conclude that the current state of the law in Tennessee does not support the Defendant's argument that a trained narcotics dog with the capability of detecting marijuana is per se unreliable because it cannot discern between marijuana and hemp. We will adhere to the prior decisions of our supreme court and other panels of this court in resolving the case before us.

Having thus determined that the trial court erred in determining that the dog was unreliable based solely upon its inability to distinguish hemp from marijuana, we turn to the question of probable cause for the search. "[P]robable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality). It requires that the available facts provide a person "'of reasonable caution in the belief'" that an item is evidence of a crime. *Id.* (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)); *State v. Banner*, 685 S.W.2d 298, 301 (Tenn. Crim. App. 1984). A car may be searched without a warrant if probable cause exists for the search. *Chambers v. Maroney*, 399 U.S. 42, 48 (1970); *State v. Leveye*, 796 S.W.2d 948, 952 (Tenn. 1990). The Supreme Court has provided the following guidance in determining whether probable cause exists in a dog-sniff case:

> The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.

*Florida v. Harris*, 568 U.S. 237, 248 (2013).

Mindful of this standard, we have reviewed the record, which demonstrates a "fair probability, given the totality of the circumstances, that contraband or evidence [would] be found" in the Defendant's car, thus, meeting the standard for establishing probable cause. *See United States v. Vaughn*, 429 F. Supp. 3d 499, 510 (E.D. Tenn. 2019) (citations omitted); *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts"). Despite the dog's inability to distinguish between hemp and marijuana, the record nevertheless demonstrates a "high probability that a controlled substance [was] in the car as four of the five substances that [the dog] could detect are illegal." *See Deluca*, 2022 WL 3451394, at \*5. The dog was trained and certified to signal the presence of marijuana,

methamphetamine, cocaine, and heroin, and the dog accurately signaled the presence of narcotics after a "free air sniff" of the Defendant's car, where the officers found heroin and methamphetamine, substances the dog was trained to detect, and fentanyl. Before the dog's signal for the presence of narcotics, the Defendant was stopped for a traffic violation, lied to Officer Dill about her identity, and admitted her knowledge of an outstanding violation of probation warrant for her arrest. Coupled with the dog's signal for the presence of narcotics, these facts support a finding of probable cause for the search of the Defendant's car. Given the totality of the circumstances in this case, we conclude upon de novo review that the officers had probable cause to search the Defendant's car based upon the dog's signal for the presence of narcotics, the Defendant's lying about her identity, the Defendant's driving on a revoked license, and her evasiveness in the face of her knowledge of the outstanding violation of probation warrant. *See Harris*, 568 U.S. at 248; *Andre JuJuan Lee Green*, 2023 WL 3944057, at *3.

In resolving this case, we have been guided to our resolution with the assistance of the supplemental briefs the parties filed in response to this court's order. We had requested the supplemental briefs to assist in our consideration of whether we should address the search as one conducted incident to arrest and whether the inevitable discovery doctrine applied. With the guidance of the supplemental briefs, we have determined that addressing those issues is not the appropriate course for resolving this case, and we appreciate the parties' continued advocacy on behalf of their respective clients.

Upon consideration of the foregoing and the record as a whole, we conclude that the trial court erred in granting the Defendant's motion to suppress. We reverse the judgment of the court, and we remand the case for reinstatement of the charges and for further proceedings.

_____
ROBERT H. MONTGOMERY, JR., JUDGE